**Milford Dean MORRISON and Ralph J. Redfern, Plaintiffs-Appellees,**

v.

**CITY OF AURORA, Colorado, Defendant-Appellant.**

**No. 85CA1397.**

Colorado Court of Appeals, Div. II.

June 25, 1987.

Rehearing Denied July 23, 1987.

Certiorari Denied (Morrison) Nov. 16, 1987.

E. Alan Hampson, Lakewood, for plaintiffs-appellees.

Kissinger & Lansing, P.C., Carl F. Lansing, Denver, Office of City Atty., Rebecca L. Shandrick, Charles H. Richardson, Patrick E. Kowaleski, Aurora, for defendant-appellant.

TURSI, Judge.

The defendant, City of Aurora, appeals the trial court's judgment in favor of the plaintiffs-property owners, Milford Dean Morrison and Ralph J. Redfern, on their

claims for inverse condemnation, negligence, and breach of contract. Its principal contentions are that the trial court erred by ruling: 1) that Aurora's final implementation of floodway restrictions in 1982 was a taking of the plaintiffs' property; 2) that the plaintiffs' breach of contract claim is not subject to the timely notice requirement of the Immunity Act; and, 3) that, in any event, the plaintiffs had satisfied that notice requirement. We agree with each of these contentions and, therefore, reverse.

The subject property was within a designated 100-year floodway area which restricted the use of 34,000 square feet of the property, and this case arises from the installation of an underground flood control drainage pipe on the property.

In 1978, Aurora planned to place an open 30-foot wide drainage channel across the property as part of its Sable Ditch Flood Control Drainage Project. However, the owners of the property at that time objected to the open channel on their property and negotiated with Aurora to install an underground pipe instead.

In September 1978, the negotiations resulted in a contract between Aurora and the owners. It provided that the owners would grant Aurora an easement for the pipe, they would construct the pipe to Aurora's specifications and design which were incorporated in the contract, and they would absorb the additional cost of the pipe. The contract did not lift the 100-year floodway restrictions on the property. The plaintiffs purchased the property in December 1978.

In 1982, after the Sable Ditch Project was completed, Aurora conducted a study to update the floodway and flood plain restrictions in the area. This study showed 23,000 square feet of the property remained subject to the 100-year floodway restricted use. Thus, the underground pipe had reduced the area of the property subject to floodway restrictions by 30 percent.

In 1983, the plaintiffs negotiated the sale of the property for $600,000. However, in June 1983 the plaintiffs and the buyers learned of the continuing floodway restriction on the property, and the buyers demanded a reduction of the purchase price. The plaintiffs ultimately sold the property in December 1983 at the reduced price of $525,000.

The plaintiffs brought this action against Aurora claiming damage of $75,000. They allege the former owners contracted with Aurora to design and install the underground pipe to allow flood drainage across the property without an open ditch and to allow for full development and utilization of the surface property. They further alleged they purchased the property in reliance on the contract and with an understanding that the full surface of the subject property would be available for development. They claimed breach of contract, negligent design of the pipe, inverse condemnation of the floodway portion of the property, and trespass.

The trial court granted summary judgment on the trespass claim in favor of Aurora since there had been no flood of the property from the time the underground pipe was built. The remaining claims were tried to the court.

The trial court ruled in favor of the plaintiffs on the remaining three claims. It held Aurora had breached the contract by designing a pipe that was incapable of handling sufficient water flow to keep the property from being subjected to floodway restrictions. It also held that Aurora undertook the duty to resolve the floodway restrictions and breached that duty by negligent design of the underground pipe. Finally, it held the floodway designation which precluded construction on a portion of the property was a taking of the plaintiffs' property. The trial court awarded the plaintiffs $60,000 in damages, costs, and attorney fees.

**I**

Aurora asserts the trial court committed reversible error by awarding plaintiffs damages on their inverse condemnation claim. It maintains that the final implementation of the 1982 floodway restrictions

did not constitute a taking of the plaintiffs' property. We agree.

■■■ Inverse condemnation is the taking of private property for public or private use, without compensation, by a public entity which has refused to exercise its eminent domain power. *Kratzenstein v. Board of County Commissioners*, 674 P.2d 1009 (Colo.App.1983). However, all private property is subject to the reasonable police powers of the state as exercised through properly constituted authorities. *Asphalt Paving Co. v. Board of County Commissioners*, 162 Colo. 254, 425 P.2d 289 (1967).

The plaintiffs concede that the adoption by a municipality of flood plain ordinances to regulate flood-prone areas is a valid exercise of police power and is not a taking. However, they maintain this case is distinguishable because Aurora went further by contracting for the building of physical improvements on the land. The trial court ruled that by imposing an artificial flood control system which the plaintiffs neither desired nor requested, Aurora was required to design the pipe drainage in a manner which would not result in the imposition of floodway restrictions. It found that Aurora failed to do so and concluded that the resulting floodway restrictions were a taking.

The plaintiffs cite several cases of successful inverse condemnation actions based on a public entity's construction of a physical improvement which caused flooding of property. However, those cases are inapposite because they involve 1) actual flooding rather than flood restrictions and 2) construction by a public entity which caused *new* flooding of property.

■■■ Here, there was no flooding of property from the time the pipe was completed to the time of trial. Furthermore, the pipe resulted in a 30 percent reduction of flood restrictions on the property. The only change in use of the property was reduction of the restrictions in favor of the plaintiffs, and there was no new appropriation of private property; thus, there was no taking of the plaintiffs' property. *Krat-*

*zenstein v. Board of County Commissioners, supra.*

## II

Aurora asserts the underlying premise of the plaintiffs' breach of contract claim is negligent design of the underground pipe. Therefore, it maintains that claim sounds principally in tort, is subject to the Colorado Governmental Immunity Act, and is barred by the plaintiffs' failure to give timely notice pursuant to § 24–10–109, C.R.S. (1982 Repl.Vol. 10). *Cf.* § 24–10–109, C.R.S. (1986 Com.Supp.). We agree.

The Immunity Act states that, except as provided by the Act, a public entity shall not be liable for "all actions which lie in or *could* lie in tort regardless of whether that may be the type of action chosen by the claimant...." Section 24–10–105, C.R.S. (1982 Repl.Vol. 10). (emphasis added) *Cf.* § 24–10–105, C.R.S. (1986 Cum.Supp.). Therefore, we must examine the substance of the plaintiffs' breach of contract claim to determine whether it could lie in tort.

The plaintiffs' complaint avers that Aurora breached the contract "in that it failed to properly design the subject conduit to serve its function, as the conduit is undersized and will not accommodate the flood drainage volume it was intended to accommodate."

This claim does not arise from the terms of the contract. It was not the contract's purpose to provide the property owners with the underground pipe designing services of Aurora. In fact, the specifications and design of the pipe were completed before the contract was executed and were incorporated in the contract. Therefore, the contract did not impose a contractual duty on Aurora to design the pipe to accommodate a specific flood drainage volume.

■■■ Nonetheless, Aurora's act of providing specifications and design for the pipe to be used gives rise to a common law tort duty to design the pipe with reasonable care and skill. *See Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983). Therefore, we conclude the substance of

this claim is that Aurora breached its common law tort duty to design the underground pipe carefully.

Accordingly, plaintiffs' claim could sound in tort, and its nature was not changed by the existence of the contractual relationship between the parties. *Sussman v. University of Colorado Health Sciences Center,* 706 P.2d 443 (Colo.App.1985). Hence, the Immunity Act was applicable to this claim.

The plaintiffs cite *Spaur v. City of Greeley,* 150 Colo. 346, 372 P.2d 730 (1962) and *Trimble v. City & County of Denver,* 697 P.2d 716 (Colo.1985) and argue that governmental immunity does not exist as to contracts entered by Aurora. However, *Spaur* and *Trimble* involved claims for breach of obligations which arose from the terms of the contract and therefore are distinguishable from this case. *See Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983) (The class of purchasers entitled to contractual protection of implied warranty Has not been extended to subsequent purchasers).

### III

Aurora also asserts the trial court committed reversible error by holding the plaintiffs had satisfied the timely notice requirement of the Immunity Act. We agree.

### A

The Immunity Act covers all tort actions against public entities. Section 24–10–105, C.R.S. (1982 Repl.Vol. 10). *Cf.* § 24–10–105, C.R.S. (1986 Cum.Supp.). Section 24–10–109, C.R.S. (1982 Repl.Vol. 10) provides any person claiming to have suffered an injury by a public entity must file a written notice within 180 days after the discovery of the injury. *Cf.* § 24–10–109, C.R.S. (1986 Cum.Supp.).

The plaintiffs provided written notice to Aurora on March 14, 1984. Aurora contended the plaintiffs discovered their injury when they received actual notice of the floodway restrictions on the property in June 1983. Therefore, it maintained the March 14, 1984, notice was not filed within the required 180–day period.

The trial court held "that no cause of action sufficient to trigger the notice requirement arose until such time as duty, breach of duty and, ultimately, damages came together, and that occurred at the time of the closing" on the plaintiffs' contract to sell the property in December 1983. However, § 24–10–109 does not allow an aggrieved party to wait to file its action until all the elements of the claim mature. *State v. Young,* 665 P.2d 108 (Colo.1983); *Mountain Gravel & Construction Co. v. City of Cortez,* 721 P.2d 698 (Colo.App. 1986). The plaintiffs' knowledge of their claimed injuries and potential action for damages starts the 180–day notice period running. *Carroll v. Regional Transportation District,* 638 P.2d 816 (Colo.App.1981).

Here, the plaintiffs were aware of the claimed injury to the property and the potential damages in June when the notice of the floodway restrictions precipitated the renegotiation of their selling price for the property. Therefore, we conclude the trial court erred as a matter of law by ruling the notice requirement was not triggered until the damage element of the claim was mature.

### B

Nevertheless, the plaintiffs maintain their claims are not barred by their failure to file timely notice. First, they contend that since Aurora purchased insurance to cover its liability, it waived its defense of governmental immunity pursuant to § 24–10–104, C.R.S. (1982 Repl.Vol. 10), and therefore, the notice requirement was also waived. However, the notice provision is a condition precedent to the commencement of the negligence action against Aurora, and no provision in the Act alters the requirement of notice where the entity carries liability insurance. *Jones v. Kristensen,* 38 Colo.App. 513, 563 P.2d 959 (1977), *aff'd,* 195 Colo. 122, 575 P.2d 854 (1978).

The plaintiffs also argue that Aurora is equitably estopped from setting up

the notice requirement as a bar to actions against it. However, for the doctrine of estoppel to apply against Aurora, the plaintiffs must show a change of position to their detriment in justifiable reliance on the words or conduct of Aurora. *Jones v. Kristensen, supra.* The plaintiffs have failed to allege or show such a change in their position.

 We conclude the plaintiffs were required to provide timely notice to Aurora of the claims they designated as negligence and breach of contract. Their failure to provide proper notice renders those claims subject to dismissal at any stage of the proceedings. *Kratzenstein v. Board of County Commissioners, supra.*

Since we reverse the trial court's judgment on these issues, we need not reach Aurora's other contentions.

The judgment of the trial court is reversed and the cause is remanded with directions to dismiss the plaintiffs' complaint.

SMITH and BABCOCK, JJ., concur.