Jeffrey B. BARRACK, Frank Brittin Clayton III, Janet Beardsley, Karl Kurtz, and Janis Yabes, Plaintiffs–Appellants,

v.

CITY OF LAFAYETTE, Robert Burger, Alex Ariniello, Larry Gupton, Tim Larsen, Sharon Stetson, Phyllis Thieme, and Don Yoshihara, Defendants–Appellees.

No. 90CA0406.

Colorado Court of Appeals,
Div. IV.

Aug. 15, 1991.

As Modified on Denial of Rehearing
Sept. 26, 1991.

Certiorari Denied April 20, 1992.

Cross-Petition for Certiorari
Granted April 20, 1992.

Taussig & Taussig, John G. Taussig and Connie Brenton, Boulder, for plaintiffs-appellants.

Frank Brittin Clayton III, pro se.

Hall & Evans, Daniel R. Satriana, Jr., Sean R. Gallagher, Ronald Cohen, Office of the City Atty., and Holme, Roberts & Owen, Patricia C. Tisdale, Denver, for defendants-appellees.

Opinion by Judge ROTHENBERG.

Plaintiffs Jeffrey B. Barrack, Frank Brittin Clayton III, Janet Beardsley, Karl Kurtz, and Janis Yabes, appeal the trial court's dismissal of their claims against defendants, City of Lafayette, Robert Burger, Alex Ariniello, Larry Gupton, Tim Larsen, Sharon Stetson, Phyllis Thieme, and Don Yoshihara. We affirm in part, reverse in part and remand with directions.

In the 1920's, the City of Lafayette built a pipeline which carried untreated water from South Boulder Creek to a Lafayette water treatment facility for purification. The pipeline ran through Eldorado Springs. During the 1940's, Lafayette allowed certain Eldorado Springs property owners to tap into the water line for domestic water service. However, since the water was untreated, each property owner had to execute an agreement with the City verifying that the owner knew the water was not filtered or purified. Also, the property owners had to agree to hold the City harmless for claims arising from the water service. Each property owner paid to install the meters and paid service charges for the water.

In 1972, the City of Lafayette told the residents of Eldorado Springs that their

water service would be terminated on July 1, 1974. Later, however, the City agreed not to terminate the water service in exchange for certain releases from property owners.

On December 16, 1986, the Lafayette City Council determined that it would be unlawful for the City to continue supplying plaintiffs with untreated water, and the council passed a resolution authorizing the termination of the water service. On December 18, 1986, the council advised each plaintiff by registered letter that service would terminate July 1, 1987.

In June 1987, plaintiffs appeared before the council, expressed their willingness to work with the city council to find a solution, and urged the council to reconsider. In August 1987, plaintiffs filed this action against the City of Lafayette, its mayor, and the members of the Lafayette City Council seeking an injunction preventing the City from terminating plaintiffs' water service. They requested a declaratory judgment finding that the City is a public utility with a contractual duty to provide water to plaintiffs and also sought damages alleging a breach of the City's duty as a public utility. Additionally, plaintiffs claimed breach of implied contract, denial of due process rights, and estoppel. Plaintiffs did not allege any tort claims.

At the hearing on plaintiffs' motion for preliminary injunction, the trial court found that the City's act of supplying untreated water violated public health regulations. The court therefore found that plaintiffs could not demonstrate a reasonable probability of success on the merits and denied plaintiffs' motion for preliminary injunction.

Plaintiffs then filed a motion for temporary restraining order, claiming that new circumstances entitled them to relief. At a hearing before a different judge, plaintiffs presented proof that the City could have obtained a short term variance from the Colorado Department of Health to allow plaintiffs time to find alternate water sources. The trial court granted plaintiffs' motion for a temporary restraining order.

Also in December 1987, the parties entered into a partial stipulation extending the temporary restraining order to April 15, 1988, and providing that, after April 15, the City could discontinue all water service to plaintiffs whether or not plaintiffs had an alternate source of water. In the stipulation, plaintiffs reserved their damages claims. *On December 30, 1987, plaintiffs gave defendants notice of intent to sue under the Colorado Governmental Immunity Act.* On April 15, 1988, the City terminated plaintiffs' water service.

In July 1988, plaintiffs sent defendants a second notice of intent to sue under the Colorado Governmental Immunity Act.

In January 1989, plaintiffs moved to amend their complaint to add tort claims including fraud, negligent misrepresentation, and outrageous conduct. The trial court, however, found that the plaintiffs had discovered their injury on December 18, 1986, when each plaintiff received a registered letter from the City. And, since plaintiffs' notice was sent more than six months later, the court concluded that plaintiffs had failed to comply with the notice requirements of the Colorado Governmental Immunity Act.

Accordingly, the trial court denied the plaintiffs' motion to amend to add tort claims, but did allow plaintiffs to amend their contract claims and to include constitutional claims.

Thereafter, defendants filed a motion to dismiss or, in the alternative, for judgment on the pleadings, contending that since it was no longer legal for them to supply plaintiffs with untreated water, they were excused from performing under the contract by the doctrine of impossibility of performance. Defendants also requested dismissal of plaintiffs' due process claim.

In opposition to the motion to dismiss, plaintiffs claimed that the City of Lafayette is a public utility with a duty to provide "the kind of water that will comply with the health laws ... of the State of Colorado." Thus, plaintiffs contended that since the City was required to provide them with treated water, the illegality issue was irrelevant.

In January 1990, the court also ruled that the City of Lafayette was not a public utility as to plaintiffs. Since plaintiffs' remaining claims had hinged upon the assumption that the City was a public utility, the court dismissed the remaining contract and constitutional claims.

## I.

Plaintiffs first contend that the trial court erred in dismissing their tort claims for failure to comply with the notice provisions of the Colorado Governmental Immunity Act. We agree.

## A.

Section 24–10–109(1), C.R.S. (1988 Repl. Vol. 10A), the Colorado Governmental Immunity Act, provides:

"Any person claiming to have suffered an injury by a public entity ... shall file a written notice ... within one hundred eighty days *after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.*" (emphasis added)

■ The Colorado Governmental Immunity Act applies to all actions against public entities or their employees which lie or could lie in tort, regardless of whether that may be the type of action or the form of relief chosen by the claimant. *State Personnel Board v. Lloyd*, 752 P.2d 559 (Colo. 1988).

■ Section 24–10–109 does not allow an aggrieved party to wait until all elements of the claim mature before filing an action. The 180–day notice period begins to run when a plaintiff becomes aware of the claimed injuries and potential action for damages. *See Morrison v. City of Aurora*, 745 P.2d 1042 (Colo.App.1987). However, a claimant must have a reasonable opportunity to discover the basic, material facts underlying the claim before giving the required statutory notice. *See State v. Young*, 665 P.2d 108 (Colo.1983).

Here, the plaintiffs and the City dispute the date when the plaintiffs first "became aware of the claimed injuries and potential action for damages." *Morrison v. City of Aurora, supra.*

■ The City urges us to conclude as a matter of law that December 16, 1986, was the date of discovery. On that date, the Lafayette City Council sent plaintiffs registered letters informing them that their water service would be terminated.

■ Plaintiffs disagree and emphasize that when they filed their action on August 20, 1987, it was for injunctive relief, breach of contract, and denial of due process only. They did not file any tort claims. Under the Colorado Governmental Immunity Act, notice is not required for contract claims, *State Personnel Board v. Lloyd*, 752 P.2d 559 (Colo.1988), or for civil rights violations. *Mucci v. Falcon School District*, 655 P.2d 422 (Colo.App.1982).

Further, after filing their lawsuit, the plaintiffs received a court order which temporarily restrained the City from terminating their water service. Then, in December 1987, plaintiffs entered into a stipulation with the City which also prevented interruption of water service until April 15, 1988.

Thus, despite the city council's threats of termination, which began in 1972 and occurred again in December 1986, it is undisputed that the City did not and, because of the court order and stipulation, *could not* terminate plaintiffs' water service until April 15, 1988.

Under these circumstances, plaintiffs urge us to conclude, as a matter of law, that the city council's mere threats of future action did not trigger the notice requirement of the Act and that it was not until April 15, 1988, that they actually became aware of their injuries and damages. Since notice was sent on December 30, 1987, plaintiffs contend that it was timely.

In *Morrison v. City of Aurora, supra,* sellers of real property brought a suit against the City of Aurora after the sellers had to reduce the price of their property because of flood restrictions. A central issue in *Morrison* was whether the plain-

tiffs had complied with the notice requirement of the Act. This turned on the issue of when the plaintiffs knew of their claimed injuries and damages.

The plaintiffs learned that Aurora planned to place a drainage channel across the subject property in 1978 and plaintiffs objected. They began negotiations with Aurora which resulted in a contract granting plaintiffs an easement.

In 1982, Aurora conducted an updated study and concluded that a portion of plaintiffs' property was still subject to flood restrictions. Plaintiffs learned of those restrictions in *June* 1983. However, plaintiff sold the property at a reduced price and therefore incurred their damages in *December* 1983.

This court held that, for purposes of the Act, the period for giving notice began to run in June 1983 because:

"plaintiffs were aware of the claimed injury to the property and the potential damages in June when the notice of the floodway restrictions precipitated the renegotiation of their selling price for the property. Therefore, we conclude the trial court erred as a matter of law by ruling the notice requirement was not triggered until the damage element of the claim was mature."

By analogy, here, the plaintiffs were threatened as early as 1972 with termination of their water services and, as in *Morrison,* plaintiffs negotiated with the City. Here, however, despite threats and legal proceedings, it was not until December, 1987, when they entered into the stipulation with the City, that plaintiff actually became aware of the potential for tort injuries and damages. And, unlike the situation in *Morrison,* the actual damages to these plaintiffs did not exist until April 15, 1988, and may never have existed. Thus, under these particular circumstances, it would have been premature for these plaintiffs to have given notice of their tort claims before December 1987. *See Morrison v. City of Aurora, supra.*

The notice requirement of the Governmental Immunity Act furthers the legitimate state interests of:

"fostering prompt investigation while the evidence is still fresh; repair of any dangerous condition; quick and amicable settlement of meritorious claims; and preparation of fiscal planning to meet any possible liability." *Fritz v. Regents. of University of Colorado,* 196 Colo. 335, 586 P.2d 23 (1978). *See also State Compensation Insurance Fund v. Colorado Springs,* 43 Colo.App. 112, 602 P.2d 881 (1979).

Even though the Act has been amended since *Fritz* and compliance is now a jurisdictional prerequisite, the basic purpose of the Act remains unchanged. Here, it is undisputed that the City of Lafayette had a full opportunity to investigate promptly the matters in issue, and also engaged in settlement negotiations with plaintiffs. *See Fritz v. Regents of University of Colorado, supra.* Thus, the conclusion that we reach here is consistent with the purposes of the Act.

In sum, we hold that the trial court erred in granting defendants' motion to dismiss plaintiffs' tort claims pursuant to the Colorado Governmental Immunity Act.

## II.

■ Plaintiffs next argue that the trial court erred in dismissing their contract claims based on the defense of impossibility of performance. We disagree.

In order to establish the defense of impossibility of performance, it is necessary to demonstrate changed circumstances which have made the "promise vitally different from what reasonably should have been within the contemplation of both parties when they entered into the contract." *Littleton v. Employers Fire Insurance Co.,* 169 Colo. 104, 453 P.2d 810 (1969). If governmental action occurs which makes a contract impossible to perform, the action must have made the performance illegal. *Colorado Performance Corp. v. Mariposa Associates,* 754 P.2d 401 (Colo.App.1987).

In their original complaint, plaintiffs alleged that the City of Lafayette provided the original Eldorado Springs property owners with untreated water. After the

City provided the original plaintiffs and their predecessors in interest with untreated water for several years, the Colorado Department of Health adopted water regulations requiring that all surface water be treated before delivery to consumers. Therefore, it was no longer legal for the City to deliver untreated water to the plaintiffs, and, under the doctrine of impossibility of performance, the City was discharged from whatever express or implied contractual obligation it may have had to the plaintiffs.

### III.

Plaintiffs next argue that the trial court erred in dismissing their due process claims. We disagree.

In order to state a claim for violation of a procedural due process right, a plaintiff must first show a property interest. The concept of a property interest under the due process clause extends beyond actual ownership of real estate, chattels, or money, and includes a person's interest in a "benefit." However, in order to have a property interest in a benefit, one must have more than an abstract need or desire for the benefit; one must have a legitimate claim of entitlement to it. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Here, plaintiffs claim that they have a protected property interest in continued water service. We would agree with plaintiffs if they had contracted for treated water which could be supplied legally. *See Denver Welfare Rights Organization v. Public Utilities Commission*, 190 Colo. 329, 547 P.2d 239 (1976). However, here, they contracted for untreated water which could no longer be legally supplied. Since plaintiffs are not entitled to continued service of untreated water, the trial court properly dismissed their due process claim.

That portion of the judgment dismissing the contract and constitutional claims is affirmed. That portion of the judgment based upon the denial of plaintiffs' motion to amend their complaint to add tort claims is reversed, and the cause is remanded with directions to the trial court to grant plaintiffs' motion to amend and for further proceedings on plaintiffs' tort claims.

REED and VAN CISE*, JJ., concur.