24CA2222 Wolfe v Colorado Springs 02-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2222
El Paso County District Court No. 21CV30930
Honorable David A. Gilbert, Judge

Leigh Ann Wolfe, a/k/a Leigh Ann Thurston, Smiling Days, LLC, a Colorado
limited liability company, Flying W, LLC, a Colorado limited liability company,
and Overcome, LLC, a Colorado limited liability company,

Plaintiffs-Appellees,

v.

City of Colorado Springs,

Defendant-Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE HARRIS
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 5, 2026

Flynn & Wright, LLC, Bruce M. Wright, Colorado Springs, Colorado; Mulliken
Weiner Berg & Jolivet P.C., Murray I. Weiner, Colorado Springs, Colorado, for
Plaintiffs-Appellees

Marc Smith, Acting City Attorney, Ryan D. Doherty, Senior City Attorney,
Colorado Springs, Colorado, for Defendant-Appellant

¶ 1     Defendant, the City of Colorado Springs (the City), appeals the district court's denial of its second motion to dismiss. Like the prior division, which resolved the City's appeal of the denial of its first motion to dismiss, we affirm and remand the case to the district court for further proceedings.

## I.     Background

### A.     The Parties' Contract

¶ 2     Plaintiffs, Leigh Ann Wolfe; Smiling Days, LLC; Flying W, LLC; and Overcome, LLC (collectively, Wolfe), own and operate a private, commercial ranch in El Paso County (the property). After the Waldo Canyon fire burned much of the ranch and surrounding areas, the City requested permission to remove gravel from and implement flood control measures on the property to prevent sediment and runoff from inundating downstream communities and City infrastructure. Wolfe granted the City's request in exchange for its promise to complete various improvement projects (or "mitigation measures") on the property.

¶ 3     Accordingly, the parties entered into a contract under which the City agreed to construct the mitigation measures, including a water quality pond. The contract required the City to "maintain the

1

Mitigation Measures . . . for a period of three (3) years," a condition obligating it to "monitor, repair, maintain and stabilize the Mitigation Measures so that they function as designed." The parties specifically agreed that the pond "must function properly as a water quality pond."

## B.    Procedural History

¶ 4     Wolfe later sued the City, alleging that while the City had obtained the benefit of the parties' bargain — by "build[ing] catch basins and min[ing] gravel on the [p]roperty, all without charge to the City" — it had reneged on its promise to construct a functioning water quality pond. According to the complaint, the water quality pond never "function[ed] properly" and "was neither built nor maintained by the City in accordance with the Contract, Federal or Colorado law, or the applicable City regulations." The complaint asserted a claim for breach of contract and sought damages or specific performance.[1]

---

[1] The district court later dismissed the claim for specific performance. *See Wheat Ridge Urb. Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 746 (Colo. 2007) (holding that specific performance is "unavailable as a remedy" for a governmental entity's alleged breach of a contract).

¶ 5    The City moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), arguing that Wolfe's claim lies or could lie in tort and therefore is barred by the Colorado Governmental Immunity Act (CGIA), § 24-10-106, C.R.S. 2022.  After briefing and oral argument, the district court denied the City's motion, concluding that Wolfe's allegations did not, and could not, establish a tort claim.

¶ 6    The City brought an interlocutory appeal, contending that the district court erred by denying the motion to dismiss because the essence of Wolfe's claim is that the City negligently constructed the pond.  A division of this court affirmed.  *Wolfe v. City of Colorado Springs*, slip op. at ¶ 32 (Colo. App. No. 22CA0443, Apr. 6, 2023) (not published pursuant to C.A.R. 35(e)) (*Wolfe I*).  The *Wolfe I* division concluded that, because the "core of this dispute lies in the contract," Wolfe's "claims do not, and could not, lie in tort."  *Id.* at ¶¶ 18, 19, 26.  Additionally, the division explained that "the economic loss rule would bar any tort claim [Wolfe] could bring."  *Id.* at ¶ 26.

¶ 7    A year later, in *City of Aspen v. Burlingame Ranch II Condominium Owners Ass'n*, the supreme court held "that the

3

economic loss rule has no part to play in" the jurisdictional inquiry under the CGIA. 2024 CO 46, ¶ 66. As the court explained, the relevant inquiry — whether the injury underlying the claim arises out of tortious conduct or the breach of a tort duty — has nothing to do with whether the economic loss rule would ultimately preclude any tort claim. *Id.* at ¶ 67.

¶ 8    Shortly before the scheduled trial date (and only after its motion to continue the trial had been denied), the City again moved to dismiss Wolfe's complaint. It argued that, when addressing the first motion to dismiss, the district court and the *Wolfe I* division had improperly relied on the economic loss rule, in contravention of *Burlingame*. The district court rejected the City's arguments and denied the second motion to dismiss:

> The plain reading of [*Burlingame*] further supports this Court's and the reviewing appellate court's findings that this case lies in contract and does not, and could not[,] lie in tort.
>
> In compliance with [*Burlingame*], the Court's analysis exists entirely outside and apart from any consideration of the economic loss rule which is now understood to be irrelevant to the determination of subject matter jurisdiction under the CGIA. In this case the suit is based on Plaintiffs' claim that their contract with the

4

> City would justify damages to cover the costs to repair or replace a pond so that it functions as a "water quality pond." Plaintiff[s] allege[] that they were not provided the item that they bargained for in the contract. . . . In essence, Plaintiffs claim they bargained for a sieve but were given a bowl.

The district court noted that Wolfe had not asserted a negligence claim, but it made clear that in denying the motion, it was "not relying on simply the way Plaintiffs have fashioned their Complaint, but on the actual substance of the claims being presented."

¶ 9　The City again appeals.

## II.　Legal Principles

¶ 10　Whether a claim is barred by the CGIA is an issue of subject matter jurisdiction. *Burlingame*, ¶ 23. "[T]he district court may determine the jurisdictional issue without an evidentiary hearing if it accepts all the plaintiff's assertions of fact as true. In such cases, the jurisdictional issue may be determined as a matter of law, and the appellate court reviews the district court's ruling de novo." *Hansen v. Long*, 166 P.3d 248, 250-51 (Colo. App. 2007).

¶ 11　Like the prior division, we note that neither party requested a *Trinity* hearing at which the district court could have considered disputes regarding jurisdictional facts, and neither party asserts on

appeal that the district court erred by not holding such a hearing. *See Trinity Broad. of Denv., Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993). Therefore, like the district court, we treat the allegations in Wolfe's complaint as true. *See Daniel v. City of Colorado Springs*, 2014 CO 34, ¶ 7 n.2.

¶ 12 The CGIA mandates that a "public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of . . . the type of action or the form of relief chosen by the claimant." § 24-10-106(1), C.R.S. 2022. Because the CGIA confers immunity only against potential tort liability, "claims that arise '*solely* in contract' are not subject to the immunity provision of the CGIA," while "claims that could arise in both tort and contract are barred by the CGIA." *Burlingame*, ¶ 32 (quoting *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1004 (Colo. 2008)).

¶ 13 To determine whether a claim lies in tort or could lie in tort, we must consider the factual basis underlying the claim. *Id.* at ¶ 30. The form of the complaint is not determinative; rather, a court must consider the nature of the injury and the relief sought "to determine whether the injury arose out of tortious conduct or

6

the breach of a duty arising in tort and thus whether the claim could lie in tort." *Robinson*, 179 P.3d at 1004-05.

¶ 14 "The existence and scope of any duty in tort are questions of law to be determined by the court." *Miller v. Bank of N.Y. Mellon*, 2016 COA 95, ¶ 20. "The source of a tort duty may originate from a judicial decision or a legislative enactment." *Id.*; *see also Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 89 ("Tort obligations generally arise from duties imposed by law." (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262 (Colo. 2000))).

### III.  Analysis

#### A.  The Law of the Case Doctrine

¶ 15 We first address Wolfe's arguments that the *Wolfe I* opinion is binding under the law of the case doctrine and that the City's second motion to dismiss the case on CGIA grounds is merely a frivolous attempt to have this division overrule *Wolfe I*.

¶ 16 When an appellate court rules on an issue in a case, that ruling becomes the law of the case. *People v. Curren*, 2014 COA 59M, ¶ 28. Under the law of the case doctrine, "one division of this court" is generally "bound by the decision of another division in an earlier appeal." *Interbank Invs., LLC v. Eagle River Water &*

*Sanitation Dist.*, 77 P.3d 814, 817 (Colo. App. 2003).[2]  However, the doctrine functions as a "discretionary rule of practice," *People v. Morehead*, 2019 CO 48, ¶ 10 (quoting *People ex rel. Gallagher v. Dist. Ct.*, 666 P.2d 550, 553 (Colo. 1983)), that does not preclude a court from "revisiting its own prior rulings, particularly where those rulings are no longer sound due to changed conditions of law," *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 23.

¶ 17    Although we ultimately agree with the *Wolfe I* division that the CGIA does not bar Wolfe's claims because they "do not, and could not, lie in tort," *Wolfe I*, slip op. at ¶ 18, we exercise our discretion and decline to apply the law of the case doctrine in this appeal. While the *Wolfe I* division concluded, prior to its discussion of the economic loss rule, that "[t]he core of this dispute lies in the contract," it also applied the economic loss rule as a further ground

---

[2] Contrary to the City's argument, neither the divisional nature of the court of appeals nor the unpublished status of the *Wolfe I* opinion has any bearing on whether *Wolfe I* constitutes the law of the case.  *See, e.g., Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 817 (Colo. App. 2003) ("[T]he law of the case doctrine recognizes *limited exceptions* to one division of this court being bound by the decision of another division in an earlier appeal." (emphasis added)).

for its conclusion that the CGIA did not bar Wolfe's claims. *Id.* at ¶¶ 19-26. Because the supreme court has since clarified that the economic loss rule has no bearing on whether the CGIA bars a plaintiff's claims, *Burlingame*, ¶ 1, we conclude that this intervening change in the law warrants renewed consideration of whether Wolfe's claim could lie in tort. *See Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 11 (declining to apply law of the case doctrine where the law on the relevant issue was unsettled and "sometimes misunderstood").

¶ 18 For the same reason, we decline Wolfe's invitation to impose sanctions on the City for filing a frivolous appeal. Although we find the City's argument on appeal unpersuasive and the timing of the second motion to dismiss somewhat suspect, we cannot conclude that this is one of those "clear and unequivocal cases" in which the appellant's conduct is so egregious that sanctions are warranted. *In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights." (citation omitted)), *aff'd*, 2019 CO 81.

9

## B. Wolfe's Claim Is Not Barred by the CGIA

¶ 19　As noted, the critical question is whether the injury underlying the claim arose out of tortious conduct or "out of the breach of a duty recognized in tort law." *Burlingame*, ¶ 31.

¶ 20　The City asserts that Wolfe's claim lies in tort because the complaint alleges the prima facie elements of a negligence claim — duty, breach, causation, and damages. Our inquiry into whether Wolfe could have pleaded the claim as a negligence claim starts and ends with the first element.

¶ 21　"A negligence claim will fail if it is rooted in 'circumstances for which the law imposes no duty of care upon the defendant.'" *Univ. of Denv.*, ¶ 88 (quoting *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002)). The City's briefing on appeal does not identify any duty of care recognized in tort law that Wolfe could have relied on to support a negligence claim under these circumstances.

¶ 22　At oral argument, the City suggested that the common law tort duty arose from the parties' contract. According to the City, every contract contains a tort-based, common law duty to perform work subject to the contract with reasonable care and skill, and that duty was what the City allegedly breached when it failed to construct a

10

properly functioning water quality pond. We see a number of problems with the City's position.

¶ 23    First, we do not consider arguments first asserted in oral argument. *McGihon v. Cave*, 2016 COA 78, ¶ 10 n.1.

¶ 24    Second, even setting aside its untimeliness, the argument lacks merit. True, as the City notes, our supreme court has stated that "[a] contractual obligation gives rise to a common law duty to perform the work subject to the contract with reasonable care and skill." *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043 (Colo. 1983) (first citing *Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313 (Colo. 1980); and then citing *Lembke Plumbing & Heating v. Hayutin*, 366 P.2d 673 (Colo. 1961)). However, each of the three cases that the City cites to support this proposition — *Cosmopolitan Homes*, *Metropolitan Gas*, and *Lembke Plumbing* — arose in the residential construction context and involved injury to persons or property beyond a party's failure to provide a benefit denominated in the contract. Indeed, the supreme court in *Cosmopolitan Homes* described "[t]he principle enunciated in both" *Lembke Plumbing* and *Metropolitan Gas* as "requir[ing] a builder to use reasonable care in the construction *of a home* in light of the apparent risk." 663 P.2d

11

at 1043 (emphasis added). The supreme court later reaffirmed this principle, explaining that "the law in Colorado is and has been since 1978 that . . . builders are under an independent tort duty to act without negligence in the construction of *homes*." *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 868 (Colo. 2005) (emphasis added); *see also Burlingame*, ¶ 18 (noting that "Colorado law recognizes a 'common law tort duty to build without negligence on *residential* construction' projects" (emphasis added)). The City has not pointed us to any authority supporting an extension of the duty to a scenario where a governmental entity undertakes a nonresidential construction project on private land.[3]

¶ 25    Moreover, were we to adopt the City's argument, every claim arising from a contract could be pleaded in tort for purposes of the CGIA, functionally eliminating governmental liability for even those claims arising solely in contract. By the City's logic, any claim that a governmental entity failed to perform the terms of a contract

---

[3] The City's reliance on *Morrison v. City of Aurora*, 745 P.2d 1042 (Colo. App. 1987), is misplaced. That case involved a city's pre-contractual actions that were not related to "the contract's purpose." *Id.* at 1045. Indeed, the *Morrison* division distinguished cases, like this case, that "involved claims for breach of obligations which arose from the terms of the contract." *Id.* at 1046.

12

would implicate an underlying tort duty to perform a contract with reasonable care and skill, rendering the governmental entity immune from liability and leaving the contracting party with no recourse to enforce the agreement. That outcome would fly in the face of the long-recognized proposition that "the immunity blanket provided by the CGIA does not cover 'actions grounded in contract.'" *Burlingame,* ¶ 32 (quoting *Robinson,* 179 P.3d at 1003).

¶ 26　　The City also argues that the compensatory relief sought by Wolfe supports a determination that the claim lies in tort or could lie in tort. But the argument is premised on the concept that when an injury arises from tortious conduct or from the breach of a tort duty, *and* "the aim of the requested relief is to compensate the plaintiff for that injury," the claim likely lies in tort. *Id.* at ¶ 31. In other words, the City's remedy-based argument is a mere restatement of its primary argument that Wolfe's claim arises from the breach of a tort duty.

¶ 27　　At any rate, to the extent the relief requested "informs our understanding of the nature of the injury and the duty allegedly breached," *id.,* the compensatory damages sought by Wolfe support our conclusion that this is solely a breach of contract action. Wolfe

13

does not seek damages for an injury to the property. As the district court explained, Wolfe's requested damages would "cover the costs to repair or replace a pond so that it functions as a 'water quality pond.'" Thus, Wolfe seeks damages to make the pond function as it was intended to under the contract, absent any breach by the City. *See Taylor v. Colo. State Bank of Denv.*, 440 P.2d 772, 774 (Colo. 1968) ("The fundamental rule to be observed in breach of contract actions is that the wronged party shall recover compensatory damages sufficient to place him in the position he would have occupied had the breach not occurred.").

¶ 28 In sum, the duty described in Wolfe's complaint and underlying the facts of this case arises solely from the parties' contract. As the district court put it, Wolfe alleged that they "bargained for a particular improvement to the property which was not provided." Wolfe's claim does not and could not lie in tort because the City owed Wolfe no tort-based duty when it undertook its contractual obligation to construct a functioning water quality pond. Rather, the facts underlying this dispute support only "claims that arise '*solely* in contract' [and thus] are not subject to

14

the immunity provision of the CGIA." *Burlingame*, ¶ 32 (citation omitted). Thus, Wolfe's claim is not barred by the CGIA.

## C. Attorney Fees

¶ 29 Both parties request attorney fees and costs. Wolfe invokes the prevailing party provision in the contract and C.A.R. 39.1, while the City's request is based on sections 13-16-113(2) and 13-17-201, C.R.S. 2025.

¶ 30 Because we affirm the district court's order, the City's request is denied.

¶ 31 And, as explained by the *Wolfe I* division, although Wolfe has prevailed in this appeal and may be entitled to an award of attorney fees if the district court ultimately determines that Wolfe is the prevailing party in the breach of contract action, it is not yet the prevailing party. *See Wolfe I*, slip op. at ¶ 30. Accordingly, Wolfe's request is denied as well.

## IV. Disposition

¶ 32 The order is affirmed, and the case is remanded to the district court for further proceedings.

JUDGE JOHNSON and JUDGE SCHOCK concur.

15