**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 28 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KENNA RAE MERCER,

      Plaintiff-Appellant,

v.

THE BOARD OF TRUSTEES FOR THE
UNIVERSITY OF NORTHERN
COLORADO; JUDITH PRAUL,

      Defendants,

JANICE MARTIN; RIK D'AMATO;
ELLIS COPELAND; and JOHN and
JANE DOE, whose true names are
unknown,

      Defendants-Appellees.

No. 00-1163
(D.C. No. 96-WM-1375)
(District of Colorado)

ORDER AND JUDGMENT[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **BRIMMER**,[**]
District Judge.

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

    [**]Honorable Clarence A. Brimmer, District Judge, United States Court for the
District of Wyoming, sitting by designation.

Kenna Rae Mercer ("Mercer") enrolled in a graduate program at the University of Northern Colorado ("UNC") in the fall of 1993. In March, 1996, she was dismissed from that program. As a result of her dismissal from the program, Mercer, pursuant to 42 U.S.C. § 1983, brought suit on June 11, 1996, in the United States District Court for the District of Colorado. The named defendants were the Board of Trustees for UNC, who were not identified by name, Janice Martin, Rik D'Amato, Ellis Copeland, Judith Praul, and John and Jane Doe, employees of UNC.

In her complaint, Mercer identified the defendants and under the heading "General Allegations," set forth in great detail a chronology of the problems she had at UNC. Mercer then asserted eight claims for relief. The first claim for relief was against all defendants for deprivation of a liberty interest without due process of law pursuant to 42 U.S.C. § 1983. A second claim for relief was against the Board of Trustees for deprivation of a property interest pursuant to 42 U.S.C. § 1983. The third claim for relief was against all defendants and alleged a conspiracy pursuant to 42 U.S.C. § 1983. The fourth claim for relief was a pendent state claim against Martin for defamation. 28 U.S.C. § 1367. The fifth claim was also a pendent claim against the Board of Trustees for breach of contract. The sixth claim for relief was against Martin "in her individual capacity for outrageous conduct." The seventh claim for relief was against Martin, Copeland, D'Amato and Praul in their individual capacities and John and Jane Doe for tortious interference with a contractual relationship. The eighth claim for relief was against

Martin, Copeland, D'Amato and Praul for "conspiracy."

All defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). On September 13, 1996, Mercer filed an amended complaint in which she again alleged the eight claims for relief previously pled, but indicated that she only sought equitable relief from the Board of Trustees (not monetary damages) and that the individual defendants were being sued only in their individual capacities. On January 22, 1997, all parties consented to the dismissal of Praul as a defendant. Thereafter, on March 13, 1997, Martin filed a renewed motion to dismiss and for summary judgment, and, on April 4, 1997, the other defendants filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(b).

After oral argument, the district court on June 15, 1998, granted the defendants' motions for summary judgment as to Mercer's first claim for relief, i.e., deprivation of a liberty interest without due process of law under 42 U.S.C. § 1983, and also on Mercer's fourth claim for relief against Martin for defamation. A jury trial on Mercer's six remaining claims began on June 15, 1998. After Mercer concluded her presentation of evidence, the district court granted the Board of Trustees' motion under Fed. R Civ. P. 50 and dismissed UNC from the case. The jury thereafter found for the defendants on all claims except Mercer's seventh claim against Martin for tortious interference with a contract, and on that claim the jury awarded Martin $7,500.00 in damages. On June 30, 1998, Martin filed a motion for judgment n.o.v. Almost two years later, the district court

on March 29, 2000, granted Martin's motion and entered judgment in favor of all defendants on all claims. Mercer appeals that judgment.

On appeal, Mercer in her brief sets forth five issues to be resolved: (1) whether the district court erred in granting summary judgment on her defamation claim (fourth claim); (2) whether the district court erred in granting summary judgment on her deprivation of liberty interest (first claim); (3) whether the form of verdict on her procedural due process claim was "accurate;" (4) whether the jury's award of only $7,500.00 for tortious interference with a contract (seventh claim) was supported by the evidence, or was it inadequate; and (5) whether the district court erred in granting Martin's post-trial motion for judgment n.o.v. for failure to comply with the Colorado Governmental Immunity Act.

At the outset we note that we are here concerned with only three of the defendants named in the complaint, i.e., Martin, D'Amato and Copeland. The Board of Trustees for UNC and Praul were dismissed by the district court, and on appeal there is no challenge to such dismissals. John and Jane Doe, named in the complaint as defendants, are still John and Jane Doe, and have not been further identified. So, we are only concerned with defendants Martin, D'Amato and Copeland.

Counsel first argues that the district court erred in granting Martin summary judgment on Mercer's fourth claim for relief, which was a defamation claim under state law against Martin only. This claim was based on the fact that Martin, who was Mercer's first faculty advisor, had accused Mercer of plagiarism in her presentation of a so-called

"resource guide" paper. In granting Martin summary judgment on the defamation claim, the district court held that, on the evidence before it, the "accusation" of plagiarism was true and that Martin "did not 'publish' the accusation within the meaning of the law of defamation." In this latter connection, the district court noted that the charge of plagiarism was not circulated "to anyone beyond the Psychology faculty," and that circulation of a statement within an institution or agency does not, by itself, constitute publication, citing *Asbill v. Housing Auth. of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir. 1984). We are in general accord with the district court's analysis of this particular matter.

Counsel next argues that the district court erred in granting summary judgment for Martin, D'Amato and Copeland on Mercer's first claim for relief. In her first claim, Mercer alleged that the defendants acting under the color of state law deprived her of constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution by "impugning . . . [her] honesty and integrity by accusing her of plagiarism," which accusations, she said, were false. In connection with this particular claim, the district court concluded, as it did in connection with Mercer's fourth claim for relief against Martin for defamation, that, on the record before it, Mercer had plagiarized portions of her "resource guide" paper and that accordingly, Martin's accusation of plagiarism was not false nor had there been any "publication" thereof, again citing *Asbill.* Again, we are in general accord with the district court's analysis of this matter.

In her "Statement of the Issues" at the beginning of her brief, counsel suggests that the form of verdict submitted to the jury in connection with "Mercer's Procedural Due Process Claim" was "not accurate." Mercer has not indicated with any degree of specificity the "inaccuracy" in the verdict form. There is a suggestion that the district court erred in holding that Mercer's termination from the program was for "academic" reasons, as opposed to "behavioral" reasons, and therefore, according to counsel, Mercer was entitled to "more due process" than she would otherwise be entitled to. How much more "due process" is conjectural. Be that as it may, we are not inclined to further speculate on this particular matter.

Counsel next asserts that the jury's award of only $7,500.00 against Martin on Mercer's claim of tortious interference with her "contractual relationship" was inadequate and not supported by the record. We disagree. A jury's award of damages should not be overturned on appeal "unless it is clearly erroneous and there is no evidence to support the award." *Greene v. Safeway Stores, Inc.,* 210 F.3d 1237, 1245 (10th Cir. 2000). The amount of damages was a jury question and in this regard the jury was not required to believe Mercer's testimony as to the extent of her damages.

As indicated, on June 30, 1998, Martin filed a motion for judgment n.o.v. under Fed. R. Civ. P. §§ 12(b)(1) and 50(b) alleging that Mercer had failed to comply with the Colorado Governmental Immunity Act ("Act"), C.R.S. § 24-10-101, *et seq..* That Act reads, in part, as follows:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

C.R.S. § 24-10-109(1)(2000).

Martin stated in her motion that Mercer had not filed her "notice of claim" until January 12, 1996, that Mercer had "discovered her injury" within the meaning of the Act no later than June 20, 1995, and that Mercer's notice was not filed within 180 days after such discovery. Mercer filed a response to Martin's motion, alleging that the 180 day provision of the Act did not commence to run on June 20, 1995, but later, possibly in August, 1995, and that the notice was filed within 180 days after her discovery of "tortious interference," which, as she indicated, was, at the earliest, around the end of August, 1995.

In Martin's motion for judgment n.o.v., mention is made of a "letter dated June 16, 1995, which would constitute interference with plaintiff's contract with the University of Northern Colorado." In this regard, it appears that on June 16, 1995, Martin wrote a memorandum, distributed to the School Psychology Faculty, concerning Mercer. In that memorandum, Martin stated that she had "continued concerns about Ms. Kenna Mercer's

behavior as a school psychology practicum student." Martin then listed her several "concerns," one of which was related to "A District 6 Resource Guide that she turned in as her own work." Immediately after that statement, Martin wrote as follows: "(This is plagiarism.)." In support of Martin's motion for judgment n.o.v., counsel argues that no later than June 20, 1995, Mercer became aware of the June 16 letter by Martin which would trigger the 180 day period prescribed by C.R.S. § 24-10-109. As indicated, Mercer's notice of intent was not filed until January 12, 1996, well beyond 180 days from June 20, 1995.

In her response to Martin's motion for judgment n.o.v., Mercer alleged that she did not become aware of the June 16 letter until August, 1995, and did not "review" it until September 1, 1995, and that therefore her "notice" filed on January 12, 1996, was timely.

Some time later, the district court, on March 29, 2000, entered an order granting Martin's motion for judgment n.o.v. Apparently that order was entered on the basis of the motion and response thereto, without oral argument. In so doing, the district court noted that "there is no dispute that the alleged tortuous [sic] interference arose from a June 15, 1995, memorandum authored by Martin accusing plaintiff of plagiarism and other wrongs." The district court then went on to state that "plaintiff's own verified complaint establishes that she knew of Martin's charges against her no later than June 20, 1995,"

and that January 12, 1996, was more than 180 days later than June 20, 1995.[1]  In so doing, the district court rejected Mercer's suggestion that the notice period did not begin to run until she discovered the ultimate consequences of Martin's tortious acts, namely either when she received notice of the termination of her degree program in March, 1996, or, at the earliest, when she actually received a copy of the June 16 memorandum in August of 1995.  The district court noted that the Act itself ties the 180 days to the "date of discovery of the injury," but concluded that under Colorado law, an aggrieved party may not wait to file notice until all the elements of the claim mature and the 180 day period begins to run when a claimant knows of, or through the exercise of reasonable diligence should have known of, or discovered, the <u>wrongful act,</u> citing *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 923 (Colo. 1993).

C.R.S. § 24-10-109 requires any person claiming to have suffered an injury as a result of a tort committed by a public employee committed in the course of her public

---

[1]Paragraphs 38 and 39 of Mercer's verified complaint reads as follows:
 38.  On, or about, June 16, 1995, Defendant Copeland telephoned Plaintiff to inform her of a meeting between himself, Plaintiff and Defendant Praul, on June 20, 1995.  During that telephone conversation Plaintiff was informed that Defendant Martin had accused her of plagiarism.  In fact, Plaintiff had not plagiarized any work, and Defendant Martin either knew, or recklessly disregarded the truth, of Plaintiff's innocence of this allegation.
 39.  On, or about, June 20, 1995, Plaintiff met with Defendant Copeland and Defendant Praul.  Discussed was Plaintiff's concerns regarding her grade in PPSY 680 and the   plagiarism charges.  During this meeting, Plaintiff was told that she had wrongly created a "dual relationship" with Defendant Martin.

employment, to file notice of her claim within 180 days of the date of discovery of the injury. The burden of proof is on the plaintiff to show compliance with the Act's notice requirement and a failure to substantially comply with the notice requirement is a "complete defense . . . ." *State Personnel Board v. Lloyd,* 752 P.2d 559, 562 (Colo. 1988). As the district court indicated in its grant of Martin's motion for judgment n.o.v., the district court had previously deferred ruling on pretrial motions to dismiss for failure to comply with the notice requirements of the Act until after trial.

In considering this particular matter, it should be emphasized that we are only concerned with Mercer's seventh claim for relief,, i.e., a state claim for tortious interference with Mercer's contractual relationship with UNC. In that claim for relief, Mercer alleged that Martin wantonly and intentionally interfered with UNC's performance of a contract she had for "matriculation through the Ed. S. program at the University of Northern Colorado." As we understand it, the parties agree that Martin's memorandum of June 16, 1995, wherein she accused Mercer of several improprieties, including that of plagiarism, constituted, if untrue, "tortious interference" with Mercer's contractual relationship with UNC. Accordingly, Mercer's meeting with Praul and Copeland on June 20, 1995, becomes critical.

As we understand it, at the meeting of June 20, 1995, Mercer became fully aware of Martin's various complaints about her school performance, including the accusation of plagiarism. Accordingly, the legal "injury" was discovered by Mercer no later than June 20, 1995, when she met with Copeland and Praul. On that occasion, Mercer became fully aware

of the fact that Martin, in her letter of June 16, 1995, accused her of plagiarism and circulated the letter to members of the school faculty. From our reading of the record, which includes the allegations contained in Martin's verified complaints, the June 20 meeting definitely involved, *inter alia*, a discussion concerning Martin's accusation of plagiarism, which the district court held triggered the notice requirement in the Act. January 12, 1996, is more than 180 days from June 20, 1995. In such circumstance, the district court, in our view, was justified in concluding that the notice requirements of the Act had not been met. In sum, on this particular matter we are not inclined to disturb the district court's understanding of Colorado law.

Judgment affirmed.

Entered for the Court,

Robert H. McWilliams
Senior Circuit Judge

00-1163, <u>Mercer v. Board of Trustees</u>
**EBEL, Circuit Judge, dissenting in part**

I agree with the majority's disposition of every issue except the last: whether the district court was correct to grant Martin's post-trial motion for judgment notwithstanding the verdict on Mercer's successful claim for $7,500 against Martin for tortious interference of contract. The district court entered judgment n.o.v. because it found that Mercer had failed to comply with the notice requirement of the Colorado Governmental Immunity Act ("CGIA"). <u>See</u> Colo. Rev. Stat. § 24-10-109-(1).

Unlike the majority, I would hold that Mercer complied with the notice provision of the CGIA, and thus that the district court's entry of judgment n.o.v. should be reversed. Because it would have been impossible for Mercer to know or discover, in June 1995, that Martin's memorandum would ultimately lead to Mercer's dismissal from UNC, I believe the district court clearly erred in finding that Mercer had actual or constructive knowledge in June 1995 that she had been "injured" sufficient to trigger the CGIA. <u>See</u> <u>Quintana v. City of Westminster</u>, 8 P.3d 527, 529 (Colo. App. 2000) ("[T]he trial court's findings of fact supporting a determination under the [CGIA] will not be reversed unless clearly erroneous."). I would conclude that Mercer knew Martin had tortiously interfered with the contract between Mercer and UNC only when Mercer had actually been dismissed, <u>i.e.</u>, on January 12, 1996. Since she filed her notice of intent to sue on that date, I would therefore find her notice timely under the CGIA.

The Colorado Supreme Court has interpreted the CGIA such that "the 180-day provision beg[ins] to run . . . [when the complainant] ha[s] all the information necessary to fulfill the notice requirement of section 24-10-109(2)." City of Lafayette v. Barrack, 847 P.2d 136, 139 (Colo. 1993). That section requires, inter alia, "a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of" and "the name and address of any public employee involved." Colo. Rev. Stat. § 24-10-109(2)(b), (c).

Mercer could not have known or discovered that Martin's actions would lead to Mercer's termination until the faculty decided that academic probation had failed and she should be dismissed. That decision was not made until January 1996. Consequently, it was impossible for Mercer to give "a concise statement of the factual basis of the claim, including the date, time, place and . . . event complained of" and "the name and address of any public employee involved" until she had in fact been expelled.[1] The 180-day provision began to run at that time, and it is undisputed

_____

[1]While it is true that in mid-October 1995 the faculty was seriously considering whether to expel Mercer, see App. at 1760, this fact does not change the outcome. First, Mercer's claim against Martin for tortious interference of contract arose only after the faculty actually decided to terminate Mercer; the faculty might have decided not to expel Mercer even after seriously considering it. For instance, Mercer could not identify precisely who was involved in her termination, as required by § 24-10-109(2)(c), prior to the faculty's taking definitive action. Second, even if the 180-day clock began to run in mid-October 1995, Mercer's notice, filed in January 1996, would still be timely.

that she filed her notice of intent to sue on January 12, 1996, making her filing unquestionably timely.

The district court's finding that "[Mercer's] knowledge of the allegedly false charge of plagiarism in June 1995 was the date of discovery of injury under Section 24-10-109(1)" is not supportable by the facts. This is most clearly shown by an example: Had Mercer, in early July 1995, shortly after the "date of discovery" attributed to her by the district court, filed notice of intent to sue Martin for tortious interference of contract, her notice would have been so premature as to seem bizarre or paranoid. The reason is that during the summer and early fall of 1995, the program's faculty were still trying to help Mercer attain her degree. For instance, in a letter to Mercer dated August 29, 1995, Copeland explained that if, by December 8, 1995, she completed two outstanding conditions from the remedial plan on which the Department had placed her at the end of the Spring 1995 semester, she would be removed from academic probation and could sit for her comprehensive exams. (See App. at 1745.) In addition, in a memorandum dated September 19, 1995, Copeland offered to place Mercer on another, slightly modified, remedial plan. (See App. at 1749.) Thus, three months after the June 20, 1995, meeting of Praul, Copeland, and Mercer, the underlying basis of Mercer's claim against Martin – that Martin wrongfully interfered with the contract between Mercer and UNC – had still not

come to pass. While Mercer might have known of a defamation injury in June 1995, she could not have known of a tortious interference with contract injury.

It was not until mid-October 1995 that members of the Department were recommending that Mercer be expelled from the program. (See App. at 1760.) And it was not until January 12, 1996, that Copeland sent Mercer a letter formally stating that the Department had recommended to UNC that Mercer be terminated – the event supporting Mercer's cause of action for tortious interference of contract. (See App. at 1786.) Thus, only at that point did Mercer have the information required to file properly a notice of intent to sue under the CGIA.

For this reason, I would conclude the district court erred in granting Martin's motion for judgment notwithstanding the verdict, and would order the district court to reinstate the jury's award of $7,500. I respectfully dissent on this issue.