CITY OF LAFAYETTE, Robert Burger, Alex Ariniello, Larry Gupton, Tim Larsen, Sharon Stetson, Phyllis Thieme, and Don Yoshihara, Petitioners,

v.

Jeffrey B. BARRACK, Frank Brittin Clayton, III, Janet Beardsley, Karl Kurtz, and Janis Yabes, Respondents.

No. 91SC663.

Supreme Court of Colorado,
En Banc.

Feb. 22, 1993.

Hall & Evans, Daniel R. Satriana, Jr., Sean R. Gallagher, Holme, Roberts & Owen, Patricia C. Tisdale, Denver, for petitioners.

Taussig & Taussig, John G. Taussig, Jr., Connie Brenton, Boulder, for respondents.

Frank Brittin Clayton, III, pro se.

Geoffrey T. Wilson, Denver, for amicus curiae Colorado Mun. League.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Simon P. Lipstein, Asst. Atty. Gen., Litigation Section, Denver, for amicus curiae State of Colo.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals in *Barrack v. City of Lafayette*, 829 P.2d 424 (Colo.App.1991), erred in reversing the trial court's dismissal of respondents' tort claims. In finding that the respondents gave timely notice under the Colorado Governmental Immunity Act (GIA), §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1992 Supp.), the court of appeals held that respondents discovered their injuries in December of 1987. We disagree and reverse and remand with directions.

I

The City of Lafayette (City) owns and operates a water pipeline which runs through the community of Eldorado Springs, transporting water from South Boulder Creek above Eldorado Springs to the City of Lafayette treatment plant below Eldorado Springs. Beginning in the 1940's, the City entered into a series of agreements with respondents, and their predecessors in interest, to provide raw, untreated domestic water to their residences in Eldorado Springs. On December

16, 1986, the City Council of Lafayette determined by Resolution No. 86–52 that it would terminate this supply of water effective July 1, 1987, because providing untreated water for domestic purposes was unlawful under Colorado Department of Health regulations. Department of Health, *Primary Drinking Water Regulations,* 5 Colo.Code Regs. § 1003–1, at 11.-1.1(1) (Oct.1981). The respondents were notified of this resolution by registered letters dated December 18, 1986. Following an appearance of respondents at a June 1987 city council meeting, the date of termination was extended to October 1, 1987.[1]

On August 21, 1987, respondents filed suit against the City stating six claims for relief: (1) breach of duties of a public utility; (2) breach of contract implied in fact; (3) breach of contract implied in law; (4) estoppel; (5) denial of due process; and (6) request for a declaratory judgment.[2] In the original complaint respondents alleged that "[t]he threat of [termination] has reduced the market value of [their] properties and rendered such properties virtually unmarketable at any fair price." Respondents also sought a preliminary injunction. After the preliminary injunction hearing on October 24, 1987, the trial court concluded that although respondents had demonstrated a danger of real, immediate and irreparable harm, they could not demonstrate a reasonable probability of success on the merits, and denied the request. On November 13, 1987, respondents' second request for injunctive relief was granted on the limited basis that it was possible for the City to obtain a short term variance from the department of health allowing respondents time to obtain an alternate water source. The injunction enjoined the City from terminating water service until December 8, 1987. Thereafter, the parties entered into a stipulation which extended this injunction until April 15, 1988. In ac-

cordance with this stipulation the City terminated respondents' water service on April 15, 1988.

Four months after filing the original complaint, December 30, 1987, the respondents first gave notice of intent to sue under the GIA. A second notice of intent to sue was given by respondents in July of 1988, after the actual cessation of water service. Respondents filed a motion to amend their complaint on January 19, 1989. The proposed complaint added causes of action for fraud, negligent misrepresentation, negligent misrepresentation causing financial loss in business transactions, and outrageous conduct.[3] Additionally, the proposed complaint recharacterized respondents' original claims for relief as follows: breach of contract, breach of public utility duty, denial of due process, and equitable estoppel. The proposed complaint also purported to add several city council members as defendants. On April 5, 1989, the district court denied the motion to amend the complaint, and dismissed all of respondents' original claims for failure to comply with the notice requirements of the GIA. The court found that the date of discovery of the injury was the date respondents received the December 18, 1986, letter notifying them of the city council's decision to terminate their water service. Subsequently, on reconsideration the district court amended its judgment and permitted respondents to amend their complaint with respect to the breach of contract, breach of public utility duty, and denial of due process claims. Additionally, the court permitted respondents to add a promissory estoppel claim from their second motion to amend the complaint,[4] and permitted the addition of individual council members as defendants. However, the district court did not permit respondents to add any tort-based claims because of an absence of timely notice.

---

1. *See* City of Lafayette Resolution No. 87–13 (1987).

2. The August 21, 1987 complaint will be referred to as the "original complaint."

3. These claims will be referred to collectively as the "tort-based claims."

4. The breach of contract, breach of public utility duty, denial of due process, and promissory estoppel claims will be referred to collectively as the "contract-based claims."

Approximately seven months later, January 18, 1990, the district court dismissed all of the remaining contract-based claims. The court of appeals reversed the dismissal of the tort-based claims, and affirmed the dismissal of the contract-based claims. It held that it was not until December 1987, when the respondents entered into the stipulation with the City, that they became aware of the potential for tort injuries and damages. Both parties sought certiorari review. We granted only the City's petition, and now must determine whether the court of appeals or the trial court correctly determined when the respondents discovered their injuries.

## II

◼ Respondents urge that their December 30, 1987, notice was timely for all injuries discovered on or after July 3, 1987. Their amended complaint proposed four tort claims: (1) fraud; (2) negligent misrepresentation; (3) negligent misrepresentation causing financial loss in business transactions; and (4) outrageous conduct.

As respondents assert, their fraud and misrepresentation claims are based on the City's representations, made prior to December 16, 1986, that it would provide respondents with water service and would not terminate that service unless respondents breached their contracts with the City or the City had insufficient water to supply respondents.

Respondents contend that they suffered and discovered their "injuries," as that term is used in the GIA, in the period between December 8, 1987, (when the stipulation made termination of respondents' water service inevitable) and April 15, 1988 (when the city actually terminated water service). Thus, they would have us conclude that the notice given on December 30, 1987, was timely. The court of appeals accepted respondents' argument, holding:

> It was not until December, 1987, when they entered into the stipulation with the city, that [respondents] actually became

aware of the potential for tort injuries and damages. And, ... the actual damages to [respondents] did not exist until April 15, 1988, and may never have existed. Thus, it would have been premature for [respondents] to have given notice of their tort claims before December 1987.

*Barrack v. City of Lafayette*, 829 P.2d at 428. We do not agree that respondents discovered their injuries in December of 1987, and accordingly reverse.

Section 24–10–109(1) is a nonclaim statute which raises a jurisdictional bar to actions under the GIA if notice is not given within 180 days after a claimant discovers his "injury." Section 24–10–109(1) states:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury, regardless of whether the person then knew all the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.[5]

§ 24–10–109(1), 10A C.R.S. (1988). "Injury" is defined as follows:

> "Injury" means death, injury to a person, damage to or loss of property, of whatsoever kind, which if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or form of relief chosen by a claimant.

§ 24–10–103(2), 10A C.R.S. (1988). The written notice required by section 24–10–109(1) must contain "[a] concise statement of the factual basis of the claim," and "[t]he name and address of any public employee involved, if known." § 24–10–109(2)(b), (c), 10A C.R.S. (1988).

---

**5.** Section 24–10–109(1) was amended, effective July 1, 1992. However, because the injuries alleged in this case arose prior to that date, the amendment is not relevant to our analysis. *See* ch. 172, sec. 8, 1992 Colo.Sess.Laws 1119–20.

Respondents' claims against the City allege property damage arising out of fraud and misrepresentation. With respect to these claims, respondents learned that the City's alleged representations were false when they received notice of the resolution of the city council terminating their water service. This resolution had, according to respondents, a direct and immediate impact on the value of their property—the value of their property decreased. Respondents alleged this injury in their original complaint.[6] This decrease in value is the type of injury contemplated for actions based on fraud and misrepresentation. *See* W. Prosser & W. Keeton, *Prosser and Keeton on Torts* § 110 at 767–68 (5th ed. 1984); *Restatement (Second) of Torts* §§ 549(1), 552B(1) (1965) (damages recoverable for misrepresentation include "the difference between the value of what he has received in the transaction and its purchase price or other value given for it"). Thus, the decrease in value must be viewed as "damage to or loss of property, of whatsoever kind."

Accordingly, the 180–day provision began to run on respondents' fraud and misrepresentation claims when respondents learned of the city council resolution. At that point, respondents had all the information necessary to fulfill the notice requirement of section 24–10–109(2). Because respondents failed to give notice within 180 days of the discovery of their injury, their claims are forever barred. *See* § 24–10–109(1), 10A C.R.S. (1988).

### III

Respondents' outrageous conduct claim is before this court in a different posture. In their amended complaint, respondents allege that the petitioners engaged in a pattern of conduct that amounted to outrageous conduct. *See* CJI–Civ.3d 23:2 at 75 (1989) (courts are more likely to find conduct outrageous if it involves a course of conduct rather than a single incident). However, the amended complaint alleges no specific dates on which the alleged outrageous conduct took place. Respondents argue that they have satisfied the notice requirements for the outrageous conduct claims against the petitioners insofar as the claim seeks to recover for conduct occurring within 180 days of the filing of their notice. They note that their emotional distress, lost time, and out-of-pocket expenses occurred in varying degrees over a span of several months. Respondents urge that to the extent these "injuries" occurred within 180 days of their notice, they should be compensable.

The GIA's notice requirements are "designed to permit a public entity to conduct a prompt investigation of the claim and thereby remedy a dangerous condition, to make adequate fiscal arrangements to meet any potential liability, and to prepare a defense to the claim." *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 68 (Colo.1990). *See Uberoi v. University of Colo.*, 713 P.2d 894, 899 (Colo.1986); *Fritz v. Regents of the Univ. of Colo.*, 196 Colo. 335, 338, 586 P.2d 23, 25 (1978). As such, the GIA contemplates a point in time when an individual is injured as the result of a particular course of action. Here, however, it is unclear at what point in time the injury giving rise to the outrageous conduct claim arose because the amended complaint does not disclose when the alleged outrageous conduct itself occurred, nor does the notice of intent to sue appear in the record.[7]

---

**6.** Respondents alleged in their original complaint that "[t]he threat of [water service termination] has reduced the market value of [respondents'] properties and rendered such properties virtually unmarketable at any fair price."

**7.** Section 24–10–109(2)(b) requires that the notice contain "[a] concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of; ..." § 24–10–109(2)(b), 10A C.R.S. (1988). Moreover, there is

no showing how respondents complied with § 24–10–109(6) which requires that a plaintiff wait 90 days or until the public entity has denied the claim before bringing an action under the GIA. Finally, it is unclear why § 24–10–114(4), 10A C.R.S. (1988), does not absolutely bar the outrageous conduct claim against the City. *See* ch. 166, sec. 18, 1986 Colo.Sess.Laws 882 (1986 amendment to § 24–10–114(4) barring outrageous conduct claims against public entities effective July 1, 1986).

It is for the trial court to determine whether the injury occurred within 180 days prior to respondents' notice of intent to sue. If it determines that the injury was discovered within 180 days of the notice, then the notice was timely filed with respect to the outrageous conduct claim.

Accordingly, the judgment of the court of appeals is reversed. With respect to the outrageous conduct claim, we remand to the court of appeals with directions to remand to the trial court for further proceedings consistent with this opinion.

SCOTT, J., not participating.