EBEL, Circuit Judge, dissenting in part
I agree with the majority’s disposition of every issue except the last: whether the district court was correct to grant Martin’s post-trial motion for judgment notwithstanding the verdict on Mercer’s successful claim for $7,500 against Martin for tortious interference of contract. The district court entered judgment n.o.v. because it found that Mercer had failed to comply with the notice requirement of the Colorado Governmental Immunity Act (“CGIA”). See Colo.Rev.Stat. § 24-10-109(1).
Unlike the majority, I would hold that Mercer complied with the notice provision *919 of the CGIA, and thus that the district court’s entry of judgment n.o.v. should be reversed. Because it would have been impossible for Mercer to know or discover, in June 1995, that Martin’s memorandum would ultimately lead to Mercer’s dismissal from UNC, I believe the district court clearly erred in finding that Mercer had actual or constructive knowledge in June 1995 that she had been “injured” sufficient to trigger the CGIA. See Quintana v. City of Westminster, 8 P.3d 527, 529 (Colo.App. 2000) (“[T]he trial court’s findings of fact supporting a determination under the [CGIA] will not be reversed unless clearly erroneous.”). I would conclude that Mercer knew Martin had tortiously interfered with the contract between Mercer and UNC only when Mercer had actually been dismissed, i.e., on January 12, 1996. Since she filed her notice of intent to sue on that date, I would therefore find her notice timely under the CGIA.
The Colorado Supreme Court has interpreted the CGIA such that “the 180-day provision beg[ins] to run ... [when the complainant] ha[s] all the information necessary to fulfill the notice requirement of section 24-10-109(2).” City of Lafayette v. Barrack, 847 P.2d 136, 139 (Colo.1993). That section requires, inter alia, “a concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of’ and “the name and address of any public employee involved.” Colo.Rev.Stat. § 24-10-109(2)(b), (c).
Mercer could not have known or discovered that Martin’s actions would lead to Mercer’s termination until the faculty decided that academic probation had faded and she should be dismissed. That decision was not made until January 1996. Consequently, it was impossible for Mercer to give “a concise statement of the factual basis of the claim, including the date, time, place and ... event complained of’ and “the name and address of any public employee involved” until she had in fact been expelled.[1] The 180-day provision began to run at that time, and it is undisputed that she filed her notice of intent to sue on January 12, 1996, making her filing unquestionably timely.
The district court’s finding that “[Mercer’s] knowledge of the allegedly false charge of plagiarism in June 1995 was the date of discovery of injury under Section 24-10-109(1)” is not supportable by the facts. This is most clearly shown by an example: Had Mercer, in early July 1995, shortly after the “date of discovery” attributed to her by the district court, filed notice of intent to sue Martin for tortious interference of contract, her notice would have been so premature as to seem bizarre or paranoid. The reason is that during the summer and early fall of 1995, the program’s faculty were still trying to help Mercer attain her degree. For instance, in a letter to Mercer dated August 29, 1995, Copeland explained that if, by December 8, 1995, she completed two outstanding conditions from the remedial plan on which the Department had placed her at the end of the Spring 1995 semester, she would be removed from academic probation and could sit for her comprehensive exams. (See App. at 1745.) In addition, in *920 a memorandum dated September 19, 1995, Copeland offered to place Mercer on another, slightly modified, remedial plan. (See App. at 1749.) Thus, three months after the June 20, 1995, meeting of Praul, Copeland, and Mercer, the underlying basis of Mercer’s claim against Martin — that Martin wrongfully interfered with the contract between Mercer and UNC — had still not come to pass. While Mercer might have known of a defamation injury in June 1995, she could not have known of a tor-tious interference with contract injury.
It was not until mid-October 1995 that members of the Department were recommending that Mercer be expelled from the program. (See App. at 1760.) And it was not until January 12, 1996, that Copeland sent Mercer a letter formally stating that the Department had recommended to UNC that Mercer be terminated — the event supporting Mercer’s cause of action for tortious interference of contract. (See App. at 1786.) Thus, only at that point did Mercer have the information required to file properly a notice of intent to sue under the CGIA.
For this reason, I would conclude the district court erred in granting Martin’s motion for judgment notwithstanding the verdict, and would order the district court to reinstate the jury’s award of $7,500. I respectfully dissent on this issue.

. While it is true that in mid-October 1995 the faculty was seriously considering whether to expel Mercer, see App. at 1760, this fact does not change the outcome. First, Mercer’s claim against Martin for tortious interference of contract arose only after the faculty actually decided to terminate Mercer; the faculty might have decided not to expel Mercer even after seriously considering it. For instance, Mercer could not identify precisely who was involved in her termination, as required by § 24-10-109(2)(c), prior to the faculty’s taking definitive action. Second, even if the 180-day clock began to run in mid-October 1995, Mercer’s notice, filed in January 1996, would still be timely.