[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16065

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 21, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 88-10172-CV-1-MMP-AK

GILCHRIST TIMBER COMPANY,
a Partnership,

                                                       Plaintiff-Appellant,

versus

ITT RAYONIER INCORPORATED,
a Delaware Corporation,
NATURAL RESOURCE PLANNING SERVICES INC.,
a Florida Corporation,
ANDREW V. SANTANGINI, JR.,
an individual,

                                                       Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(December 21, 2006)**

Before ANDERSON and BARKETT, Circuit Judges, and STROM,[*] District
Judge.

---

[*]Honorable Lyle E. Strom, United States District Judge for the District of Nebraska,
sitting by designation.

PER CURIAM:

Gilchrist Timber Company ("Gilchrist Timber") appeals from an order denying the award of prejudgment interest on its judgment against ITT Rayonier, Inc. ("Rayonier"), on its claims of negligent representation in connection with a purchase of land in Gilchrist County. Because the district court erred in concluding that prejudgment interest was not available as a matter of law, we reverse and remand for further proceedings consistent with this opinion.

## I. Background[1]

This action arose out of Gilchrist Timber's purchase of 22,000 acres of land from Rayonier, part of which Gilchrist Timber intended to sell for farming or residential development. Prior to the purchase, Rayonier provided Gilchrist Timber with written materials on the land, including a third-party appraisal showing that all 22,000 acres were zoned for agricultural use, and also allowed for residential use. After purchasing the land, Gilchrist Timber discovered that, in fact, 16,000 of the acres it purchased were zoned for preservation, and that only 6,000 acres were zoned agricultural. Gilchrist Timber sued, and the case proceeded to trial on its claim for negligent misrepresentation. The jury was

---

[1] Although this case has a lengthy procedural history—spanning nearly twenty years of litigation in federal court—only a brief summary of the salient facts is necessary to dispose of the issue presented in this appeal.

instructed on damages as follows:

> Now you should consider the following elements of damages that you find proved by a preponderance of the evidence and no other; that is, the difference, if any, between what you find to have been the value of the subject real property as of the date of the transaction, which was October 24, 1985, had the entire tract been zoned A-1 agricultural district under the Gilchrist County, Florida, zoning ordinances, and what you find to have been the value of the subject real property on the date of the transaction, which was October 24, 1985, as it was in reality zoned under the Gilchrist County, Florida, zoning ordinances, which was that approximately 6,000 acres were zoned A-1, agricultural, and approximately 16,000 acres zoned P-1, preservation.

The jury found in favor of Gilchrist Timber, and determined that it had suffered damages in the amount of $1,676,500. However, the district court granted judgment notwithstanding the verdict in favor of Rayonier. On appeal, this Court reversed and sustained the jury verdict and damages award. See Gilchrist Timber Co. v. ITT Rayonier, Inc., 127 F.3d 1390 (11th Cir. 1997). We remanded the case, however, for consideration of the relative negligence of the parties.

On remand, a second jury determined that Rayonier was 67% at fault; that Gilchrist Timber was 33% at fault; and that the thirty-party appraisers were not at fault. The district court entered final judgment in favor of Gilchrist Timber and against Rayonier for 67% of $1,676,500, plus post-judgment interest, nunc pro tunc to the jury verdict. The district court, however, denied Gilchrist Timber's request for an award of prejudgment interest under Florida law. Gilchrist Timber

3

now appeals that ruling.[2]

## II. Discussion

Under Florida law, "prejudgment interest is merely another element of pecuniary damages[,]" to be awarded "from the date of loss once a finder of fact has determined the amount of damages and defendant's liability therefor." Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla. 1985); see also Insurance Co. of North America v. Lexow, 937 F.2d 569, 571-73 (11th Cir. 1991). "Under the 'loss theory,' . . . neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiff's property." Argonaut, 474 So.2d at 215.

Although prejudgment interest is generally available under Florida law, tort claims tend to be excluded "primarily because tort damages are generally too speculative to liquidate before final judgment." Lumbermens Mut. Cas. Co. v. Percefull, 653 So.2d 389, 390 (Fla. 1995); Amerace Corp v. Stallings, 823 So. 2d 110, 112-13 (Fla. 2002). However, even in tort actions plaintiffs are entitled to recover prejudgment interest "when a verdict liquidates damages on [their]

---

[2] We review the district court's denial of prejudgment interest for abuse of discretion. Blasland, Bouck & Lee, Inc. v. City of North Miami, 283 F.3d 1286 (11th Cir. 2002). We review the district court's determination of Florida law de novo. Salve Regina College v. Russell, 499 U.S. 225 (1991).

out-of-pocket, pecuniary losses[.]" Argonaut, 474 So.2d at 215 (awarding prejudgment interest in subrogation action to recover monies paid for negligent property loss); see also Amerace, 823 So. 2d at 113 (holding that, although "damages in personal injury cases are too speculative to liquidate before final judgment[,]" there is an exception to this rule "if the plaintiff can establish that he or she has suffered the loss of a vested property right."); Bergen Brunswig Corp. v. State, Dept. of Health and Rehabilitative Servs., 415 So.2d 765 (Fla. 1st DCA 1982) (reversing denial of prejudgment interest in an action for conversion where the jury verdict fixed damages as of a prior date; approach expressly adopted by Florida Supreme Court in Argonaut).

Here, the district court denied Gilchrist Timber's motion for prejudgment interest on the basis that its damages were "too speculative to liquidate before final judgment." The court relied on the fact that Gilchrist Timber engaged in "various strategies" to sell the land after 1985 and "actually made a profit from the transactions."[3] Observing that it would be "extremely difficult to pinpoint when the loss of increased profits" occurred, the court concluded that Gilchrist Timber had not "suffered 'out-of-pocket, pecuniary losses' that can be quantified and set for a date certain." Gilchrist Timber argues that the district court's interpretation

---

[3] The evidence at trial showed that Gilchrist Timber ultimately sold the land and timber for a profit of about $2.5 million.

5

and application of Florida law were erroneous because the jury verdict liquidated its damages as of the purchase date, October 24, 1985. We agree.

In this case, the jury was instructed to calculate not the extent of Gilchrist Timber's *lost profits*, which arguably would have been speculative,[4] but rather the difference between the value of the land as actually zoned and the value of the land as represented at the time of sale on October 24, 1985. The jury's verdict, therefore, liquidated ascertainable, pecuniary damages as of a date certain: an overpayment of $1,676,500.00 on October 24, 1985 based on the misrepresentations as to the land's zoning. Consequently, the general rule precluding the award of prejudgment interest in tort cases does not apply.

Rayonier argues that because Gilchrist Timber proceeded on a "benefit-of-the-bargain" theory of recovery at trial, it cannot now claim "out-of-pocket losses" for the purpose of securing prejudgment interest. Rayonier has not, however, cited any authority (and we are aware of none) for the proposition that a party's theory of recovery at trial, alone, controls whether that party is entitled to prejudgment interest.

Moreover, we are persuaded that in this case, the theory of recovery made no

---

[4] See, e.g., Checkers Drive-In Restaurants, Inc. v. Tampa Checkmate Food Services, 805 So.2d 941 (Fla. 2d DCA 2001) (reversing award of prejudgment interest for lost profits anticipated over a twenty year span because the damages were not liquidated until the jury verdict).

difference, because Gilchrist Timber suffered an actual, out-of-pocket loss.[5]  On

October 24, 1985, Gilchrist Timber purchased land for $1,676,500.00 more than

what it was worth.  As of that date, then, Gilchrist Timber was out (of pocket)

$1,676,500.00.  So long as the additional money was in Rayonier's hands, Gilchrist

Timber lost the interest it would have earned on it.  See Venn v. St. Paul Fire and

Marine Ins. Co., 99 F.3d 1058, 1067 (11th Cir. 1996) (Florida's "loss theory"

recognizes that "interest is the natural fruit of money.") (citing Argonaut, 474

So.2d at 214 (quoting Sullivan v. McMillan, 19 So. 340 (Fla. 1896))).  Under

Florida law, "the loss itself is a wrongful deprivation by the defendant of the

plaintiff's property."  Argonaut, 474 So.2d at 215; see also Lexow, 937 F.2d 569,

571-72 (discussing Argonaut).  That Gilchrist Timber ultimately made a profit on

the sale of the land is of no moment.  Presumably, had the misrepresentations in

the appraisal not been made, Gilchrist Timber would have paid less for the land

(retaining the $1,676,500.00) and could have still made the same profits from the

sale of the land and its timber.

Rayonier's reliance on Alvarado v. Rice, 614 So.2d 498 (Fla. 1993), for the

---

[5] "Out-of-pocket loss" is defined as "[t]he difference between the value of what the buyer paid and the market value of what was received in return."  Black's Law Dictionary 957 (7th ed. 1999).  The "benefit-of-the-bargain rule" is "[t]he principle that a defrauded buyer may recover from the seller as damages the difference between the misrepresented value of the property and the actual value received."  Id. at 151-52.  In this case, under either theory, the effect is the same: Gilchrist Timber suffered a pecuniary loss by paying (out of pocket) more than the value of what it received in return.

proposition that Gilchrist Timber suffered no out-of-pocket loss, is misplaced. In Alvarado, the Florida Supreme Court held that prejudgment interest was not available in a personal injury action on an award for medical expenses, where the plaintiff had not paid the outstanding medical bills or been charged interest on them. The court reasoned that "Alvarado has not suffered the loss of a vested property right. She was not forced to use her private funds to pay medical bills incurred as a result of [the defendant's] negligence." Id. at 499. The court further found that "[h]ad Alvarado actually paid her medical bills when they became due, she would be suffering the loss of a vested property right because she would be denied the use of her money." Id. at 499-500. Here, there can be no dispute that Gilchrist Timber overpaid for the land, and so suffered the loss of a vested property right because it did not have use of the money which constituted the overpayment.

This case is also distinguishable from National R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc., 286 F.3d 1233 (11th Cir. 2002), on which Rayonier relies. In Rountree, an insurer sought to recover the amount it paid its insured on a claim for property loss arising from a train collision. The damaged property, a customized turbine engine, was the first of forty-five components of equipment that were to be transported to an electric plant, and the only one involved in the collision. When the insured filed a claim, the claims adjuster

8

calculated the loss by taking the value of the forty-five components before the collision, and subtracting the value of the remaining forty-four pieces after the collision. It based its payment to its insured on this formula. During the trial on damages, however, the district court rejected the insurer's approach, and directed a verdict based on the evidence as to the value of the engine, only, before the collision, and its value after the collision (when it was sold as scrap). There, we found that the court did not err when, applying Florida law, it denied the insurer prejudgment interest on this damage award. We concluded that "[t]here was no easily ascertainable, out-of-pocket amount that [the insurer] could point to as a dispositive measure of [its insured's] loss. It follows the district court did not err in treating the damages incurred by [the insured] as unascertainable and speculative before the time of final judgment, and thus in refusing to grant prejudgment interest to [the insurer]." Rountree, 286 F.3d at 1259.

Although Rayonier disputes that Gilchrist suffered an out-of-pocket loss, it has not persuaded us of that position in light of the jury instruction on the measure of damages in this case. Indeed, Rayonier's argument focuses on the speculative nature of Gilchrist Timber's *lost profits* and what it believes to be the *inadequacy of the evidence* to support the jury's verdict. It is undisputed, however, that the question of lost profits was not put before the jury; it is therefore not at issue here.

9

To the extent that Rayonier seeks to complain about the method by which the jury was asked to calculate damages, or the sufficiency of the evidence to support the jury's damage award, those questions too are not before us now.[6]

Rayonier argues that the district court's ruling should nevertheless be affirmed because the award of prejudgment interest is within the court's discretion, and the equities weigh against awarding it in this case. It is clear from the district court's order, however, that its denial of prejudgment interest was based on an error of law, not the exercise of discretion.

REVERSED AND REMANDED for further proceedings consistent with this opinion.

---

[6] See Gilchrist Timber, 127 F.3d at 1396 (rejecting Rayonier's argument that the jury could not reasonably have found that plaintiffs sustained the damages awarded, and finding sufficient evidence to sustain the jury's damages award).