2016 CO 37M

**OPEN DOOR MINISTRIES, Petitioner**

v.

**Jesse N. LIPSCHUETZ, Respondent**

**Supreme Court Case No. 14SC787**

Supreme Court of Colorado.

May 23, 2016

As Modified on Denial of Rehearing
June 27, 2016

Attorneys for Petitioner: Gibson, Dunn & Crutcher, LLP, Laura M. Sturges, John D.W. Partridge, Katherine C. Yarger, Timothy M. Zimmerman, Sara E. Carlisle, Monica K. Loseman, Denver, Colorado

Attorneys for Respondent: Carver, Schwarz, McNab, Kamper & Forbes, LLP, Peter C. Forbes, Denver, Colorado, Jesse N. Lipschuetz, Denver, Colorado

Attorneys for Amicus Curiae Colorado Counties, Inc.: Hall & Evans, L.L.C., Thomas J. Lyons, Malcolm S. Mead, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 In this case, Jesse Lipschuetz challenged the validity of a rooming and boarding permit that the City and County of Denver ("the City")[1] issued to Open Door Ministries ("Open Door"). Lipschuetz—who owns a property adjacent to Open Door's property—filed claims against the City and Open Door seeking revocation of the permit. Open Door filed cross-claims against the City, seeking declaratory and injunctive relief to prevent the revocation of its permit. The trial court concluded that the City should not have issued the permit, but stayed its order to revoke the permit until Open Door's cross-claims were resolved. Several months later, the trial court granted summary judgment in favor of Open Door on the cross-claims.

¶2 On appeal, Lipschuetz argued that Open Door's cross-claims against the City were barred by the Colorado Governmental Immunity Act ("the CGIA" or "the Act") because they "could lie in tort." *See* § 24–10–106, C.R.S. (2015). To make a claim under the CGIA, a party must notify the governmental entity prior to filing the claims. § 24–10–109(1), C.R.S. (2015). This notice requirement is jurisdictional. *Id.* Because Open Door did not notify the City prior to filing its cross-claims, Lipschuetz argued that the trial court lacked subject matter jurisdiction over the cross-claims. The court of appeals agreed. *Lipschuetz v. Open Door Ministries*, No. 13CA461, 2014 WL 3513619 (July 17, 2014). Because Open Door failed to comply with the notice provision, the court of appeals concluded, the trial court lacked subject matter jurisdiction over the cross-claims. *Id.* at 1.

¶3 However, the court of appeals failed to consider whether, at the time of filing, Open Door had suffered an injury that would subject its cross-claims to the CGIA. We conclude that the CGIA does not apply to Open Door's request for prospective relief to prevent future injury. Because Open Door had not suffered an injury before it filed its cross-claims, the CGIA did not bar its cross-

---

1. Lipschuetz sought relief from the Denver Zoning Authority, the Board of Adjustment for Zoning and its members, and the City and County of Denver. Except where specifically stated, this opinion will refer to these parties collectively as "the City."

claims seeking prospective relief from future injury, and the trial court had jurisdiction over the cross-claims.

## I. Facts and Procedural History

¶ 4 In June 2010, the Denver City Council passed Ordinance 333. Denv.; Colo. Ordinance No. 333, Series of 2010. This ordinance replaced the old zoning code but included an exception that allowed any person seeking to "erect or alter structures" to apply for a permit under the old zoning code until December 30, 2010. *Id.* On December 30, 2010, Open Door applied for a use permit under the old code to change the use of 740 Clarkson Street to provide housing for people in need. The Denver Zoning Authority ("the DZA") issued the rooming and boarding permit. Open Door then purchased the property for $700,000; made improvements to the property; and began providing room and board to people at risk of becoming homeless.

¶ 5 Several months later, Lipschuetz, who owns a home adjacent to 740 Clarkson, sought administrative review of the DZA's decision to issue the permit. He argued that Open Door did not meet the exception under Ordinance 333 because the permit was for a change of use, not to "erect or alter" a structure. The DZA defended its decision to issue the permit, explaining that it had consistently interpreted the exception to allow parties to seek any kind of permit under the old zoning code until December 30, 2010. The Board of Adjustment for Zoning Appeals ("the BOA") denied Lipschuetz's request to revoke the permit.

¶ 6 Lipschuetz then filed an administrative appeal under C.R.C.P. 106 against the BOA, the individual members of the BOA, and the Zoning Administrator for the City, seeking revocation of the permit. Lipschuetz moved to amend his complaint to add Open Door as a party because Open Door, "as an applicant for the permit in question, [was] a proper defendant in this action." The trial court granted this motion. The trial court also granted Lipschuetz's motion to add the City as a party.

¶ 7 Open Door answered the complaint, then filed cross-claims against the City for promissory estoppel and requested a declaratory judgment that the permit would remain valid. The City admitted all of the allegations in Open Door's cross-claim and argued that the permit was properly issued. The trial court then permitted Lipschuetz to intervene in Open Door's cross-claims against the City.

¶ 8 On July 26, 2012, the trial court found that the BOA abused its discretion when it affirmed the DZA's decision to issue the permit to Open Door. The court ordered the City to revoke the permit but stayed its order pending the resolution of Open Door's cross-claims. Open Door then filed a motion for summary judgment on its cross-claims on November 29, 2012. On January 25, 2013, the trial court found that promissory estoppel was an appropriate claim for relief for Open Door, but that the cross-claims also incorporated the elements of equitable estoppel. The trial court first concluded that Open Door had satisfied the elements of both promissory and equitable estoppel and then granted Open Door's motion for summary judgment. The trial court concluded that "the permit must be enforced to prevent manifest injustice."

¶ 9 Lipschuetz appealed, arguing for the first time that Open Door's cross-claims "could lie in tort" and were therefore subject to the CGIA. *See* §§ 24–10–101 to –120, C.R.S. (2015). He argued that the cross-claims amounted to an equitable estoppel claim based on Open Door's reliance on the City's "misrepresentation" that the permit was valid, and therefore, the claims could lie in tort. Lipschuetz contended that, because Open Door failed to give the City notice as required by the CGIA, the trial court lacked subject matter jurisdiction over the cross-claims. *See* § 24–10–109(1). The court of appeals agreed, holding that Open Door's estoppel cross-claims "could lie in tort." *Lipschuetz,* slip op. at 7 (citing *Bd. of Cty. Comm'rs v. DeLozier,* 917 P.2d 714, 715 (Colo.1996) (distinguishing promissory estoppel from equitable estoppel based on either a negligent or intentional misrepresentation of fact and concluding that a promissory estoppel claim is not subject to the CGIA)). Thus, the court of appeals concluded that Open Door should have notified the City of its intent to file the cross-claims. *Lipschuetz,*

slip op. at 12. The court of appeals concluded that, because Open Door failed to comply with the CGIA's notice requirement, the trial court did not have jurisdiction over Open Door's claims. *Id.*

¶ 10 We granted Open Door's petition for certiorari to consider whether the CGIA required Open Door to notify the City before filing its cross-claims against the City seeking prospective relief from a future injury.[2]

## II. Standard of Review

¶ 11 Whether the CGIA applies to claims for prospective relief to prevent future injury presents a question of statutory interpretation, which we review de novo. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003 (Colo.2008).

## III. Analysis

¶ 12 The CGIA requires plaintiffs to notify governmental entities before filing claims against them where (1) the plaintiffs have suffered an injury and (2) the claims "lie in tort or could lie in tort." § 24–10–106. The court of appeals concluded that, because Open Door failed to comply with this notice requirement, its cross-claims against the City were barred by the CGIA. *Lipschuetz*, slip op. at 12. By arriving at this conclusion, the court of appeals missed an important first step: it failed to consider whether Open Door had suffered an injury. The CGIA applies only to claims that seek relief from an injury that has already occurred. *See* §§ 24–10–106, –109(1). Open Door has not suffered an injury because it still owns and operates 740 Clarkson for rooming and boarding pursuant to a valid permit. Consequently, the CGIA did not bar its claims, and Open Door was not required to comply with the CGIA's notice provision. Thus, Lipschuetz's attempt to invoke the CGIA to bar Open Door's cross-claims fails; the trial court had jurisdiction over Open Door's cross-claims.

---

2. Specifically, we granted certiorari to review the following issues:

   1. Whether a claim for non-compensatory, prospective declaratory and injunctive relief to prevent future injury implicates the Colorado Governmental Immunity Act ("CGIA").

## A. The Colorado Governmental Immunity Act

¶ 13 Until 1971, governmental entities in Colorado enjoyed protection from suit under the doctrine of sovereign immunity. In *Evans v. Board of County Commissioners of El Paso County*, we departed from that doctrine. 174 Colo. 97, 482 P.2d 968, 968 (1971), *superseded by statute on other grounds as recognized in Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176 (Colo.2001). We observed that the judicially created doctrine resulted in "the injustice and inequity—even absurdity—of having recovery for negligence against individuals and against firms for negligence of their employees, but no recovery against governmental units for the negligence of their employees." *Id.* at 969. We concluded that the General Assembly—and not the courts—should determine when, if ever, governmental entities should have immunity from suit. *Id.* at 972. The General Assembly responded by adopting the CGIA. *See* Colorado Governmental Immunity Act, Ch. 373, sec. 1, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204, 1204–12 (now codified at §§ 24–10–101 to –120).

¶ 14 The CGIA aims to protect governmental entities and, by extension, taxpayers from "the consequences of unlimited liability." § 24–10–102. To achieve this goal, the Act generally immunizes public entities from claims for injury that lie or could lie in tort. *Id.* The Act attempts to "includ[e] within one article all the circumstances under which the state ... may be liable for actions which lie in tort." *Id.* To bring a claim under the CGIA, "[a]ny person claiming to have suffered an injury by a public entity" must file "written notice ... within one hundred eighty-two days after the date of the discovery of the injury." § 24–10–109(1). Compliance with this provision is a "jurisdictional prerequisite." *Id.; Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1194–95 (Colo.1996). Failure to comply with the notice provision

---

2. Whether CGIA's requirement that "[a]ny person claiming to have suffered an injury by a public entity file a written notice ... within [182] days after the date of the discovery of the injury," § 24–10–109(1), C.R.S. (2015), applies to claims seeking prospective declaratory and injunctive relief to prevent future injury.

"shall forever bar any such action." § 24–10–109(1).

¶ 15 The CGIA applies to "all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24–10–106(1). The CGIA applies when (1) the complaint alleges an injury and (2) the claim lies in tort or could lie in tort. *Id.* The CGIA defines an "injury" as "death, injury to a person, damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant." § 24–10–103(2). The statute clearly identifies the types of injuries that would support a claim under the CGIA—"death, injury to a person, [and] damage to or loss of property, of whatsoever kind." *Id.*

¶ 16 Whether a party has suffered an injury and whether the claim could lie in tort are two separate questions, which require separate inquiries. *See Robinson*, 179 P.3d at 1005. When a plaintiff alleges that he or she was injured by a governmental entity, the court "must assess the nature of the injury underlying the claim to determine ... whether the claim could lie in tort." *Id.* at 1005. The nature of the injury alleged—not the relief requested—is the primary inquiry to determine whether the CGIA applies to the claim. *Id.* at 1006. Other questions—such as whether the claim could lie in tort and the type of relief sought—follow this initial injury analysis. With this focus on the importance of the nature of the alleged injury in mind, we turn to the question of whether the CGIA applies to a claim seeking relief from a future injury.

## B. The CGIA Does Not Apply to Claims for Prospective Relief to Prevent Future Injury.

¶ 17 In order to determine whether the CGIA applied to Open Door's cross-claims, we must first consider whether Open Door's claim alleged an "injury" for the purposes of the CGIA. *See Robinson*, 179 P.3d at 1005. Open Door's cross-claims sought prospective relief to prevent a future injury. We therefore must consider whether the CGIA applies to claims based on a threat-

ened or future injury. After examining the statutory language, we hold that the CGIA does not bar claims for prospective relief to prevent future injury.

¶ 18 In interpreting the CGIA, we aim to give effect to the legislature's intent, and look first to the plain and ordinary meaning of the statute's language. *Burnett v. Colo. Dep't of Nat. Res.*, 2015 CO 19, ¶ 12, 346 P.3d 1005, 1008. Here, the statutory language is clear: the CGIA applies only to claims that allege that an injury has already occurred.

¶ 19 The CGIA applies to "all *claims for injury* which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant." § 24–10–106 (emphasis added). The CGIA defines injury to include death, personal injury, and property damage. § 24–10–103(2). Such injuries are cognizable only after they occur; a person cannot pursue a tort claim for future death, future physical injury, or future property damage. *See, e.g., Isaac v. Am. Heritage Bank & Tr. Co.*, 675 P.2d 742, 744 (Colo.1984) ("One of the basic principles of law is that a party may not recover damages if he has not suffered an injury."); *see also* 74 Am.Jur.2d *Torts* § 9 (2016) ("[T]he possibility of a future injury is insufficient to maintain a tort claim."). Therefore, the CGIA applies only to claims involving injuries that have already occurred.

¶ 20 The notice provision of the CGIA provides additional support for the conclusion that the legislature did not intend that the CGIA apply to claims to prevent future injury. The notice provision states, "Any person claiming *to have suffered an injury* by a public entity ... shall file a written notice ... within one hundred and eighty-two days *after the discovery of the injury*." § 24–10–109(1) (emphasis added). The statute's use of the past perfect tense—referring to a past injury that someone "claims to have suffered"—indicates that the alleged injury already occurred. *Id.* The statute also requires the plaintiff to notify the offending government agency "after the discovery of the injury," cementing the conclusion that the CGIA applies only after the plaintiff dis-

covers an injury that has already occurred. *Id.*

¶ 21 Our precedent confirms this conclusion. For example, in *Robinson*, the plaintiff alleged that the Colorado State Lottery Division continued to advertise and sell lottery tickets for months after the advertised prizes had already been awarded. 179 P.3d at 1001. Robinson claimed that she was injured by this practice because she had paid for lottery tickets "with the expectation that she could win the advertised and represented prizes," which had already been claimed. *Id.* at 1002. We concluded that the "underlying injury asserted in Robinson's claims [arose] out of the alleged misrepresentation of certain facts." *Id.* at 1001. Therefore, the claims "could lie in tort for the purposes of governmental immunity" and were "barred by the CGIA." *Id.* But we arrived at this conclusion only after determining that (1) the plaintiff had suffered an injury (i.e. paying for lottery tickets when the advertised prizes were unavailable) and then (2) assessing the nature of that injury (i.e. evaluating whether the injury stemmed from fraud or misrepresentation). *Id.* at 1005–06.

¶ 22 In addition to *Robinson*, our cases examining whether a claim could lie in tort for purposes of the CGIA all revolve around a plaintiff's claim for relief from a past or ongoing injury. *See, e.g., Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 688 (Colo.2008) (contamination of a manufacturing site); *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1168 (Colo.2000) (hostile work environment and retaliatory discharge); *DeLozier*, 917 P.2d at 715 (failure to offer a job after promising to do so); *Berg v. State Bd. of Agric.*, 919 P.2d 254, 259 (Colo.1996) (failure to pay medical expenses); *see also Upper Platte & Beaver Canal Co. v. Riverview Commons Gen. Improvement Dist.*, 250 P.3d 711, 713 (Colo.App.2010) (impaired easement to access ditch and increased risk of flooding); *Kohn v. City of Boulder*, 919 P.2d 822 (Colo.App.1995) (denial of development plan); *Lehman v. City of Louisville*, 857 P.2d 455 (Colo.App.1992) (City Administrator's determination that property use violated zoning ordinance).

¶ 23 In *City of Lafayette v. Barrack*, the plaintiffs filed several claims for relief, including estoppel and declaratory judgment, 847 P.2d 136, 137 (Colo.1993). But unlike this case, the plaintiffs claimed that they had already been injured by the city's actions. *Id.* In *Barrack*, the City of Lafayette determined that it must terminate water service to residences in Eldorado Springs because providing untreated water to residences violated Department of Health regulations. *Id.* The City of Lafayette adopted a resolution stating its intent to terminate water service and notified the residents in a letter that water service would be terminated. *Id.* Several residents filed suit against the City of Lafayette, alleging that "[t]he threat of [termination] ha[d] reduced the market value of [their] properties and rendered such properties virtually unmarketable at any fair price." *Id.* (alteration in original). Thus, the *Barrack* plaintiffs argued that the City of Lafayette's resolution to terminate water service caused the diminution in the value of their properties. *Id.* As such, the *Barrack* plaintiffs had already suffered an injury by the time they filed their complaint. *Id.* Therefore, *Barrack* parallels our CGIA precedent, which holds that the CGIA applies only to claims for a past injury. *See id.*

¶ 24 Unlike *Barrack*, where the plaintiffs were injured by the City of Lafayette's resolution to terminate water service, Open Door was not immediately injured by the possibility that Lipschuetz's lawsuit would result in the revocation of its permit. When Open Door filed its claims with the trial court, its permit was valid and it retained the ability to use the property as it intended. Neither party suggests that the possibility that the permit could be revoked caused any diminution of the value of 740 Clarkson. Therefore, *Barrack* does not support a conclusion that Open Door was injured before it filed its cross-claims.

¶ 25 In summary, the CGIA's language clearly indicates that the legislature did not intend for the CGIA to apply to claims for relief from future injury. Moreover, in every case where we have considered whether the CGIA applies to a claim, we have examined the nature of the injury that the plaintiff has already suffered. We therefore hold that CGIA does not bar claims for prospective relief to prevent future injury. The question

remains, then, whether Open Door has suffered an injury that would place its claims within the CGIA's purview and thus require it to comply with the notice provision.

### C. Open Door Has Not Yet Suffered an Injury.

¶ 26 Because Open Door still holds a valid permit and operates 740 Clarkson for its intended purpose—rooming and boarding—we conclude that Open Door has not been injured. Therefore, Open Door's cross-claims seek relief to prevent a future injury. Consequently, the CGIA does not apply to the claims, and Open Door was not required to comply with the CGIA's notice provision.

¶ 27 Lipschuetz, in an attempt to bar Open Door's cross-claims against the City, contends that Open Door previously suffered an injury that would support a negligent misrepresentation claim.[3] Because a negligent misrepresentation claim could lie in tort, he argues, the cross-claims are subject to the CGIA. Lipscheutz claims that Open Door was injured when it bought 740 Clarkson because, at that time, Open Door bought the property in reliance on the City's "misrepresentation" that the permit was valid. Open Door failed to notify the City of its intent to bring a claim within 182 days of its acquisition of the property. See § 24–10–109(1). Therefore, Lipschuetz claims, Open Door's cross-claims are barred by the CGIA. Id. We disagree.

¶ 28 Essentially, Lipschuetz argues that a party is always injured when it buys or sells property in reliance on a statement that could be a misrepresentation. To support his argument that Open Door was injured when it bought 740 Clarkson, Lipschuetz cites a court of appeals case and several cases from other jurisdictions. See Resp't's Br. 17–18 (citing Deutsche Tr. Co. Ams. v. Samora, 2013 COA 81, ¶ 27, 321 P.3d 590, 596; Shepard v. Holmes, 185 Wash.App. 730, 345 P.3d 786, 791 (2014); Gilchrist Timber Co. v. ITT Rayonier Inc., 472 F.3d 1329, 1332–33 (11th Cir.2006); Fandy Corp. v. Lun–Fong Chen, 262 A.D.2d 352,691 N.Y.S.2d 572, 573 (1999)). However, these cases do not support the conclusion that a party is always injured at the moment he buys or sells property after relying on a misrepresentation. Instead, the cases answer altogether different inquiries, such as when a cause of action accrues,[4] Deutsche Tr. Co. Ams., ¶ 27, 321 P.3d at 596; Shepard, 345 P.3d at 791; Fandy Corp., 691 N.Y.S.2d at 573, or from which point in time prejudgment interest should be calculated, Gilchrist Timber Co., 472 F.3d at 1332–33.

¶ 29 Open Door was not injured when it bought 740 Clarkson.[5] Before Open Door bought 740 Clarkson, it obtained a permit to operate the property for rooming and boarding. When it filed its cross-claims, Open Door's permit was still valid, and Open Door continued to use the property for its intended purpose. Cf. Lehman, 857 P.2d at 456 (noting that the plaintiffs claimed that they were injured by the City Administrator's determination that they could not use their property as they had intended); Shep-

---

**3.** The City admitted Open Door's allegations and defended the permit. The City never claimed immunity under the CGIA.

**4.** The question of when a cause of action accrues is separate from when an injury occurs. Section 13–80–108, C.R.S. (2015), governs the accrual of various causes of action. The statute does not equate a claim's accrual with the date that a party suffers an injury, but instead recognizes that the two events may happen at different times. See § 13–80–108(1) (stating that a claim accrues when "both the injury and its cause are known"); § 13–80–108(3) (recognizing that misrepresentation claims accrue when the misrepresentation is discovered). But even if we were to agree that a party is injured at the same time that a claim accrues, as Lipschuetz suggests, we would still conclude that Open Door had not been injured when it bought 740 Clarkson.

When it bought the property, Open Door had no reason to believe that the City had improperly issued the permit, so the claim did not accrue at that time. § 13–80–108(3).

**5.** Lipschuetz argues that if Open Door has not suffered an injury, then it lacks standing to pursue its cross-claims. However, this argument conflates the injury-in-fact requirement for standing with the injury requirement for the CGIA. Injury, as defined by the CGIA, includes only injuries that have already occurred. See §§ 24–10–103(2), –106, –109(1). By contrast, a party may satisfy the injury-in-fact requirement for standing by showing that an action "threatens to cause injury to the plaintiff's present or imminent activities." Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs., 830 P.2d 1045, 1053 (Colo. 1992).

*ard*, 345 P.3d at 791 (stating that plaintiff was injured because she was barred from developing the property as she had intended). Additionally, neither party claims that Open Door suffered a pecuniary loss by purchasing 740 Clarkson for more than it was worth. *Cf. Gilchrist Timber Co.*, 472 F.3d at 1332–33 (noting that purchaser suffered an immediate, monetary loss by purchasing property for more than it was worth). Thus, had Open Door attempted to file a claim that "could lie in tort" when it bought the property, as Lipschuetz suggests, no injury would have existed—measured either by diminished usefulness of the property or monetary loss—to support the claim. *See* 74 Am. Jur.2d *Torts* § 9. Accordingly, Open Door was not injured when it purchased the property.

¶ 30 Open Door also was not injured by the possibility that Lipschuetz's suit could result in the revocation of the permit. *Cf. Barrack*, 847 P.2d at 137 (noting that the plaintiffs alleged that their property values decreased when the city resolved to terminate water service). Open Door filed its cross-claims before the trial court determined that the City issued the permit improperly. Therefore, Open Door was not injured when it filed its cross-claims. At the time of filing, Open Door's cross-claims clearly sought relief to prevent a possible, but not inevitable, injury.

¶ 31 Accordingly, because Open Door had not suffered an injury when it filed its cross-claims, it was not required to comply with the CGIA's notice provision. Lipschuetz's attempt to invoke the CGIA to block Open Door's cross-claims fails. The trial court had jurisdiction over Open Door's cross-claims.

### IV. Conclusion

¶ 32 The CGIA protects governmental entities from claims for injuries that "lie in tort or could lie in tort." § 24–10–106. The statute does not apply to claims for prospective relief from an injury that has not yet occurred. Therefore, because Open Door was not injured at the time of filing, the CGIA did not apply to its claims, and Open Door was not required to comply with the CGIA's notice provision. *See* § 24–10–109(1). Accordingly, we reverse the court of appeals' decision and remand the case for proceedings consistent with this opinion.